## DOUGLASS v. DAISLEY.

(Circuit Court of Appeals, First Circuit. April 16, 1902.)

### No. 385.

1. MERCANTILE AGENCIES—COMMUNICATIONS—WHEN PRIVILEGED AS MATTER OF LAW.

A mercantile agency received a report from one of its agents that plaintiff had made an assignment. The report came in on a general assignment form; but, under a heading requiring the agent to furnish every possible particular, was a statement that it was made to secure the assignee for indorsing a note. The agency sent out a communica-

tion that plaintiff had assigned for the benefit of creditors. *Held* not a privileged communication, as matter of law, because of substantial departure from information received.

**2. SAME—LOSS OF PRIVILEGE—NEGLIGENCE.**

If the mistake was one which could not have been avoided by reasonable care, the privilege was not lost; but if the result of carelessness, the privilege failed.

**3. SAME—QUESTION FOR JURY.**

The question whether the mistake in the present case was due to carelessness, so as to destroy the privilege, was for the jury.

**4. SAME—LOSS OF BUSINESS AND CREDIT—GENERAL ALLEGATION.**

Plaintiff, where his complaint contained a general allegation of loss of business and credit, could recover by showing immediate diminution to business, etc., and was not required to connect the loss with the communication by evidence of particular instances.

In Error to the Circuit Court of the United States for the District of Massachusetts.

G. Philip Wardner and William W. MacFarland (Carver & Blodgett, on the brief), for plaintiff in error.

Charles F. Choate, Jr. (Josiah H. Benton, Jr., on the brief), for defendant in error.

Before COLT, Circuit Judge, and ALDRICH and BROWN, District Judges.

ALDRICH, District Judge. The defendant is a mercantile agency, known as the R. G. Dun & Co. agency; and on the 28th day of March, 1898, sent out a notice to its subscribers that the plaintiff had assigned for the benefit of his creditors; and the plaintiff brings his action in tort for libel. The defendant does not justify by showing that the communication sent was true, but claims that, by reason of the character of the business of the agency and of the occasion, the communication was privileged, in the sense that the occasion and the relations of the parties exempt the defendant from liability.

In jurisdictions where such communications are treated as privileged, the privilege is a qualified one, and when information is furnished under circumstances which give it a privileged character, though false, recovery cannot be had unless malice or bad faith is shown. In other jurisdictions, like Georgia, Texas, Missouri, Wisconsin, and in some of the cases in the federal circuits, like Locke v. Bradstreet Co. (C. C.) 22 Fed. 771, the privilege is made to depend somewhat upon the question of due care in the matter of selection of agents, and in respect to the means and manner of communication; and Mr. Francis Wharton, in his valuable note to Trussell v. Scarlett (C. C.) 18 Fed. 214, would seem to give some indorsement to the latter view. In New York and many other jurisdictions, if the requisite occasion and relations exist, such communications, speaking in general terms, are treated as privileged, and the doctrine of immunity from liability is recognized, except in cases where malice or bad faith is shown; and the doctrine is not made to depend much, if at all, upon the question of due care.

It is not necessary in this case that we should examine into the origin, the reason, or the wisdom of the rule of privilege and non-liability as it has been applied in the cases to which we have been referred.

Under the defendant's main contention here in respect to the question of privilege, they largely rely on Ormsby v. Douglass, 37 N. Y. 477, which is supplemented by numerous authorities sustaining the view of that case. Ormsby v. Douglass has been frequently referred to in decisions in jurisdictions where the rule of that case obtains, and the weight of authority, both English and American, would seem to be in accord with the principle of that case, and we may well enough, we think, without going into a history of these decisions, accept the rule of such cases as the law.

The rule of immunity from liability, in cases where it applies, results largely from the necessities of business and the strong presumption of absence of malice; and the rule of the New York cases unquestionably is that, in the absence of actual proof of malice or bad faith, the privilege justifies the agency in transmitting the information it receives. But, conceding the full force of the New York cases and those holding the same view, the defendant is not within the doctrine there established. The general information which it received upon the blank which it had furnished its agent at South Framingham, Mass., was that James Daisley, the plaintiff, had made an assignment to B. T. Thompson, of Framingham, and, under, a heading upon the blank which required the agent to furnish any particulars possible, was an exact and particular statement of what the assignment was; namely, to secure the assignee for indorsing a note. Such was the information received at the office of the agency at Boston; but, instead of sending out the information received, they sent a communication saying, "James Daisley, of South Framingham, Massachusetts, has assigned to B. T. Thompson for the benefit of his creditors." This was a plain and substantial departure from the information received. Therefore, it was not sending information received or information accurate in substance. They were informed that the plaintiff had assigned to secure the indorser of a note, and the information was not that he had made a general assignment for the benefit of creditors. The first, in the ordinary acceptation, would not necessarily be injurious to the party's credit or business, while the other, in the ordinary acceptation, means a general failure, and would necessarily be injurious.

The case of Ormsby v. Douglass, supra, distinguishes itself at once from the situation here, for the rule is there distinctly stated that "so long as the defendant acted in good faith in reporting facts which came to his knowledge," etc. The later New York case of Haft v. Bank, 19 App. Div. 423, 46 N. Y. Supp. 481, on which the defendant largely relies, bases its decision upon the same ground; that is to say, that the bank, in the due course of its business, forwarded the precise information which it received from its messenger. The English case of Lawless v. Oil Co. (1869) L. R. 4 Q. B. 262, 267, is in the same line, and the decision is based, as in the other cases, upon the ground that "what the directors did was this: In

their report to a meeting of the shareholders they appended the statement which had been made to them by the auditors." The case of Robinson v. Dun, 24 Ont. App. 287, 289, treats a privileged communication as one made on a privileged occasion, and fairly warranted by it. It in no sense goes beyond the doctrine of the New York cases in respect to the idea that the communication is privileged, as a rule of law, when limited to the information received, but its reasoning would seem to tend somewhat in the direction of making the question whether the information was fairly warranted an element, or, in other words, in the direction of the other line of authorities, which make the privilege depend somewhat upon the question of due care.

We recognize the exigencies of business and the demands of public policy in respect to information as to the standing of business men in their trade and calling, and we carry to the defendant, for the purposes of this phase of the case, the full force of the authorities upon which it relies. But we are not inclined to extend the privilege, as a rule of law, beyond that of protection, so long as the agency acts in good faith in reporting, with substantial accuracy, information which comes to its knowledge; in other words, beyond the rule of the cases most favorable to the defendant, that the agency, in the absence of bad faith, is privileged in communicating information received, although it may prove to be false.

Where a false report originates in the office, and is not based upon information, the circumstances and the occasion do not necessarily involve a privilege. Carrying the qualified privilege to communications of the character in question, by rule of law, would be carrying the doctrine of immunity beyond the rule in respect to absolute privilege. Mr. Bigelow, in his work on Torts (7th Ed.) § 332, in treating of the higher privilege of the publication of court proceedings, and speaking of the report of such proceedings, says:

"If, however, the same should be so incomplete or so stated as to give a wrong impression, or, though full, if it is followed by comment containing defamatory matter, the privilege would fail."

The case of King v. Patterson, 49 N. J. Law, 417, 9 Atl. 705, 60 Am. Rep. 622, presents a careful review of the American and English cases, with reasoning which would seem to be sound, as to why the rule of privilege should not be extended beyond its present limit. In that case, the general rule is recognized; but, on the question of extending it further, and to include communications to those who are not subscribers, it is observed that "neither the welfare nor the convenience of society will be promoted by bringing the publication of matters, false in fact, injuriously affecting the credit and standing of merchants and traders, broadcast throughout the land, within the protection of privileged communications." In that case it is further suggested that, while the subject in relation to which the communication is made may be privileged, the communication may be unprivileged, and the matter of duty to send the information is made an important element of the question; and, though the doctrine of privilege was there recognized while communicating to its patrons information received, it was observed that

the agency, in its conduct and management, must be subjected to the ordinary rules of law, and the proprietors and managers held to the liability which the law attaches to like acts of others.

We think the privilege in a business situation like this, which results as matter of law, rests upon the right to send information received, and upon the duty to send with substantial accuracy such information as is received. The communication in question does not rest wholly or with substantial accuracy upon information received. How can it be said, as a matter of law, either that the agency was privileged to send something plainly and substantially different from what had been received, or that any duty rested upon it to send information substantially different from that which it had received? Neither the right nor the duty to send different information exists in this case; consequently there was no privilege which can be ruled as matter of law, and the defendant is liable unless, under proper instructions, facts necessary to clothe the transaction with the immunity of privilege shall be found by a jury. As said in King v. Patterson, supra (page 427, 49 N. J. Law, and page 710, 9 Atl., 60 Am. Rep. 622):

"A defendant intends to send a communication derogatory to the plaintiff's character or circumstances to A, where it would do no harm. By inadvertence he sends it to B, which produces the injury complained of. It is obvious that it would be a plain transgression of legal principles to excuse the act he did because he intended to do an act from which no injury to the plaintiff would have resulted."

We have seen that the communication in question was not based upon information received; neither was it based upon anything known at the home office. A communication cannot be accepted as privileged as a matter of law which is neither warranted by information received nor by facts known at the home office. It was neither the right nor the public or private duty of the agency to send a communication which was not based upon fact or information. The communication, therefore, not being based upon information from an agent whose business it was to gather information, or upon foundation of fact, it is not a privileged one in the sense of clothing the defendant with immunity from liability through an arbitrary rule of law. In short, we find no case which pretends, through a rule of law, to bring a communication like this within the domain of privilege; nor do we see any reason for carrying absolute privilege to such a communication.

The English case of Tompson v. Dashwood, 11 Q. B. Div. 43, was a case where a communication was intended to be made on a privileged occasion, but was sent to the wrong person; and, while the case is not like the one here, for there it was a mistake in sending to the wrong person rather than a mistake in sending wrong matter, the privilege was held to exist. This case is, perhaps, the most favorable to the defendant's position of any that has come to our attention. But this authority is criticised by Mr. Pollock in his treatise on Torts, as one not by any means universally accepted by the profession, and as contrary to the earlier decisions. Pol. Torts, 216, 234; Webb, Pol. Torts, 309. We are not disposed to adopt the doc-

trine of this case, and hold, as a matter of law, without regard to the question of due care, that the communication was privileged.

We think the circuit court was right in holding that the communication in question was so substantial a departure from the information received that it could not be accepted as privileged, as a matter of law, and that the defendant was not within the rule which gives immunity as a matter of law upon the ground of privilege. So, upon this phase of the case, we hold against the defendant, for the reason that the circumstances are not such as to bring it within the doctrine of the cases upon which the defendant relies.

This disposes of the first assignment of error, which, in substance, is that the defendant was entitled to a verdict as a matter of law, upon the ground of privilege.

Having considered the question whether immunity resulted by rule of law under the circumstances of this case, we come, at the next step, to the question whether, on the other hand, liability resulted by rule of law, and this is the precise question raised by assignments 2, 3, and 4; and we think there was error here, for the reason that the situation was one which, under the circumstances, involved a question of fact which should have been submitted to the jury. The occasion, which was that of receiving and communicating information relating to the subject-matter in question, was privileged; and, the occasion being privileged, the Boston agency, in the ordinary course of its business of receiving information and imparting it to its subscribers in the business world, was in the exercise of a privilege in the nature of a private right, or, as expressed by some of the authorities, a public right. Therefore, starting with this right, if unwarrantable and injurious consequences result, it cannot be said, except in a very clear case, that liability results as a matter of law from a variance between the information received and the communication sent.

No case like the one here presented has been called to our attention, and we do not find that the precise question has been passed upon either by the supreme court of the United States or by the courts of Massachusetts, nor do we find that the precise question has been dealt with elsewhere. We must, therefore, deal with it somewhat as a new question.

The occasion being privileged, we do not think the general rule of law that liability results from accidental or inadvertent slander, and that the accident or inadvertence only operates to remove malice and limit the damages, applies to this case, and it is for the reason that the occasion was privileged, and the defendant was in the exercise of a right. It being a business right, however, or a private right, to gather and impart information to such members of the business world as were its subscribers, it must exercise the right reasonably, to the end that unnecessary harm shall not come to business men about whom the information is furnished. It is not a right which can be exercised heedlessly or carelessly. It is difficult to find a principle of law which would justify the careless and wanton exercise of a right of this character, and afford immunity on the ground of privilege. It is equally difficult, starting with a privileged occasion, to find a principle which would justify an absolute ruling of law upon

the question of liability upon the ground of variance between the information received and that sent, and this is for the reason that the variance may be susceptible of explanation. Reasonable care and prudence with respect to forwarding information may, therefore, continue the privilege and clothe the acts of the agency with immunity, and, on the contrary, negligence may destroy the privilege and leave the parties responsible for acts which are culpable. Though the occasion is privileged, the privilege does not carry immunity to heedless and careless management in forwarding information. While the question whether an occasion is privileged is one of law, the ultimate question of privilege may become a mixed question of law and fact, through a variance between the information and the communication, and under such circumstances the question would be whether the privilege was carried to the communication through a reasonable and careful exercise of the right, or whether the privilege was lost by indifferent and careless management, or through inattention and want of due regard to the interests of others. If it was a pure mistake, involving no negligence or culpability, the privilege would not fail. On the other hand, if, by the exercise of such care as men ordinarily exercise in like business affairs, the true character of the information would have been discovered and correct information sent out, rather than that which was not warranted, then the privilege would fail. The communication sent being substantially different from the information received, the question whether it was libelous and injurious was quite likely one for the court; but the question whether it was a privileged communication, though different from the information, depended upon the question of fact whether the variance resulted from an excusable mistake, or from indifference or heedlessness.

Even the privilege of regular process does not protect against unreasonable and careless use. Any right or privilege may be so carelessly used as to lose the protection which it would otherwise afford. No privilege which affects the public at large grants immunity from negligent and careless acts. So, in the case under consideration, the question for the jury, under the circumstances, was not whether the communication was a libel,—not whether the variance was a substantial departure,—because such were questions of law, but whether the defendant's conduct was such as to give immunity, on the one hand, or so wanting in care, or so indifferent, as to make the privilege fail.

The contract between the agency and the subscribers contemplates verbal, written, and printed information, and provides that the agency shall not be responsible for neglect, unfaithfulness, or misconduct of agents; but this stipulation, of course, does not bind a member of the public who is not a party to it, and, as against such parties, to be within the privilege, the home office, in transmitting information, must be in the exercise of reasonable care. We do not look upon this holding as a departure from the principle which applies to reports of public proceedings, where the privilege is lost by an unreasonable exercise of the right, or by an unreasonable or unnecessary mode of communication, like sending a privileged com-

munication by telegraph or postal card, where the communication becomes unprivileged. Indeed the recognized and controlling general principle is that a report, in order to be privileged as a matter of law, whether it be a report of a judicial proceeding or of a commercial agency, shall be a fair report; and in cases where the report is not fairly warranted by the information, exemption from liability upon the ground of privilege, or, what would be a more exact expression, upon the ground of excusable libel, may and should depend upon reasonableness of skill and care in reporting, and the question of skill and care becomes a question of fact for the jury. See Paterson, Liberty of the Press, Speech, and Public Worship, 184, 185, 192, 193, 203, 204.

In the regular course of the business of the agency the report came in from the Framingham agent on a general assignment form; and the mistake, quite likely, although the question is one of fact, resulted from the assumption that the assignment was a general one. Still, while the general statement in the body of the form in a sense indicated a general assignment, under the head which calls for particulars the report was clear as to the nature of the assignment. So, under such a situation, we think the communication sent out was neither so clearly an excusable mistake that it can be ruled a privileged communication as a matter of law, nor so clearly a wanton and heedless variance between the information received and the communication sent as to justify a ruling that the privilege failed absolutely, and that the defendant was liable. While the variation was a substantial one, in the absence of malice the situation does not present a case where it can be said that it was "as completely an invention of an untruth by the defendant as though he had received no information whatever," and that "the information received afforded no justification, no palliation, no excuse," and "as though he had sent out this untrue statement without a shadow of any information on his records about James Daisley"; nor was it a situation which justified the assumption and instruction that "it was made out of whole cloth, and was a mere blunder." And, while the variance between the information and the communication was so substantial and so injurious as to render the communication actionable per se, in the absence of privilege, still there was a reasonable question for the jury as to whether it was a pure mistake, and one which could not have been avoided by careful business management, or, on the other hand, whether the privilege of furnishing information in the ordinary course of business was carelessly exercised. It was for the jury to say whether reasonable care required the home office to read the whole paper and gather all the information that it contained, and whether it was reasonable to act upon the general appearance of the assignment form, and send the information which it did. If it was carelessness, the privilege was lost. If it was a mistake which could not have been avoided by the exercise of reasonable care, privilege and immunity were not lost. In other words, if the home office was reasonably careful and prudent in respect to this transaction in the ordinary course of its business, the privilege continued, and would cover the mistake; but if

the departure from the information was the result of want of care and heedlessness, the privilege failed.

The erroneous communication did not originate with the agent furnishing the information, but resulted from an attempt in the home office to transmit information received; and there is no pretense that they acted upon information other than that received from the Framingham agent; therefore the erroneous communication resulted from the conduct of an agent for whose acts the defendant is responsible. Still, if the mistake was one which could not have been avoided by the exercise of reasonable care, the privilege of the occasion would afford immunity; while, on the other hand, if the mistake was the result of heedlessness and want of reasonable care, the privilege would fail, and immunity would not result from the privilege of the occasion. Neither the privilege of the occasion nor the privilege of sending in good faith information received, though false, furnishes immunity from careless management in the home office, or the careless exercise of the right; nor does the privilege arbitrarily fail by reason of a pure mistake of the home office involving no negligence or culpability. One may lose the protection of this privilege, like any other, through negligence, or he may safeguard himself by its protection through the exercise of such a degree of care at the home office as would be exercised by men of ordinary circumspection, care, and prudence in similar situations. If the privilege is lost through carelessness, then the defendant is answerable for the consequences of circulating injurious reports, and the rights would be determined regardless of the question of privilege, under the ordinary rules which obtain in libel cases.

In Trussell v. Scarlett (C. C.) 18 Fed. 214, 216, the privilege was made to depend upon reasonable caution, and in Locke v. Bradstreet Co. (C. C.) 22 Fed. 771, 774, in submitting the question to the jury, the question of privilege was made to depend upon the exercise of ordinary care and caution.

The error being in the home office, there is no question raised for us as to the responsibility of the defendant in respect to the care of the agent who furnished the information. When there is a departure at the home office from information received, as is often the case in business in condensing, summarizing, and forwarding the reports, management and superintendence are necessarily involved, and, as all this affects the standing and the interests of one who is a stranger to the contract between the agency and the subscriber about whom the report is made, why should not the immunity of privilege depend upon the exercise of reasonable care?

It is fully recognized and established by the authorities that sending out from the home office the report received, knowing it to be false, or sending a true report in bad faith, or sending a true report unnecessarily or maliciously, makes the privilege fail. Inquiries in respect to all these elements involve fact, and it is perfectly clear and logical that the same principle makes privilege depend upon the fact of careful and prudent conduct and management in the home office when there is a departure from the information sent and a misstatement like the one in question here. It is not the question

whether the communication was actionable under the general law of libel, but the question whether privilege exists as a protection to the defendant. That depends upon the rule of reasonableness in respect to the conduct and care of one who invokes the immunity of its protection. If the jury should find the necessary fact of careful and reasonable exercise of the right, then the privilege would exist, and the defendant would be within its protection and immunity, and, if not, it would be subject to the ordinary rules of law.

Making the question of privilege and immunity depend upon the question of fact as to the reasonable exercise of the right is not, in principle, altogether unlike, but is somewhat analogous to, the probable cause doctrine, which involves a question of fact for the jury in cases under circumstances where it is an admissible ground of defense (Folk. Starkie, Sland. & Lib. [6th Ed.] 34, 349–352), and in cases where it is received in mitigation of damages.

The very nature of the business of mercantile agencies makes it impracticable to apply the old rule as to presumption of malice from publication or from gross mismanagement. The reports are gathered from all parts of the country, and in the ordinary course of business there is no such thing as malice in the transaction. No one claims it in this case. Much of the confusion in the books results from attempts to apply ancient rules of presumption, and we have no hesitation in saying that we think the safer and the better rule, in a situation like this, where neither actual malice nor bad faith is suggested, is the ordinary rule that, in the exercise of the privilege or the right, one should be held to the ordinary rule of due care. Mr. Bigelow has aptly said:

"It is, indeed, common to say that malice is presumed or implied upon proof of the publication; but that means nothing, and is only misleading, for the presumption or implication cannot be overturned by evidence of want of malice. Malice, touching the making a prima facie case, is only a name arbitrarily applied; simply a fiction." Bigelow, Torts (7th Ed.) § 319.

In a case where malice is not an active question, why should not the existence or nonexistence of privilege be made to depend upon the existence or nonexistence of due care, and upon a reasonable exercise of the right, rather than upon illogical presumptions one way or the other as to malice, and, in a case where malice becomes an actual element, let the question of malice be tried like any other question of fact.

In this case all questions of malice and bad faith, and all questions as to vindictive damages, were properly eliminated by the position of the parties and by the court, and we are now brought to the questions raised by assignments 14, 15, and 16, which relate to the allegation of damages, to the sufficiency of proofs, and to the instructions upon the question of damages; and we find no error here. We do not understand that, in this class of cases, the general allegation of injury to business and credit is treated as an allegation of special damages, in the sense of requiring specific allegations of loss of particular customers in order to recover for general diminution. The proof was general as to the immediate diminution of business and loss of credit. There was no evidence of loss of par-

ticular customers or contracts, and the instructions distinctly elimi-
nated all such considerations, and confined the jury to such injury
by way of diminution of business and loss of credit as they should
find from the general facts and the whole situation was caused by
the publication.

No question is raised as to the sufficiency of the proofs, provided
such damages are recoverable under the allegation set forth, nor as
to the sufficiency of the instructions as to the measure of damages.
The general rule of compensation for injury was given to the jury
with a limitation in general terms that, in order to recover for
diminution, the injury suffered must have resulted directly from the
wrongful publication. No point was taken that the instructions were
not sufficiently full or explicit upon the line that the injury must
have been the natural consequence of the injurious publication, or
such as naturally and proximately resulted; so there are no ques-
tions of that kind for us to consider.

The general rule in libel and slander cases is aptly stated in Ham-
ilton v. Walters, 4 U. C. Q. B. (O. S.) 24, 27, that the plaintiff "may
state his case in either of two ways. He may aver a general diminu-
tion of business, in consequence of the slander, relying upon his
ability to make that appear to a jury, or he may aver a particular
instance of damage, knowing that he can give evidence of loss in a
specific case." The plaintiff in the case at bar, in his general alle-
gation and proofs, proceeded in the first way. That a plaintiff may
do this is, of course, not the result of a rule which is general in its
application to all actions of tort, but of one which is, perhaps, pe-
culiar to those of libel and slander. The reason for the rule may
be that evil report is insidious, that it travels and does damage in
the dark, meandering in ways whereof it is difficult for man to find
out, or because, as said in Bergmann v. Jones, 94 N. Y. 51, cases
may arise where, from the nature of the business in which the party
is engaged, it would be almost impossible to prove the loss of trade by
witnesses who had dealt with the party bringing the suit.

Such rule, in this class of cases, is probably limited to cases where
the words are actionable per se, where the words, in their natural and
ordinary meaning, import a crime, or such as are clearly injurious to
one's business, profession, or trade. We do not find any express
decision in Massachusetts upon this question, but it would seem to be
the English rule, the rule in New York, and the rule quite generally
adopted in this country. See cases in 18 Am. & Eng. Enc. Law
(2d Ed.) 1084 (4), note 1; cases in 5 Enc. Pl. & Prac. 768d; Associ-
ated Press v. Heath, 49 App. Div. 247, 253, 254, 63 N. Y. Supp.
96; Bergmann v. Jones, 94 N. Y. 51, 60, 61; Hale, Dam. 226, and
cases in note 23; Folk. Starkie, Sland. & Lib. (3d. Ed.) 347, 348.

Under the general allegation in this case, the plaintiff introduced
evidence tending to show general loss of business and general loss
of credit immediately following the publication complained of. In
such a situation, under proper instructions (and no exceptions were
taken to the instructions to the jury on the question of damages in
this case), we think the jury were warranted, in view of all the evidence
and under the circumstances disclosed, in estimating the damages to

determine what part, if any, of the loss was attributable to the publication, and that it was not necessary for the plaintiff to connect the loss with the publication by direct or positive evidence of particular instances.

The result is that the judgment should be set aside, upon the ground that the question of defendant's liability should not have been ruled as a matter of law under the circumstances.

The judgment of the circuit court is reversed, the verdict is set aside, the case is remanded to that court for further proceedings, and the plaintiff in error recovers costs in this court.