**RILEY v. DUN & BRADSTREET, Inc.**
No. 10674.

United States Court of Appeals
Sixth Circuit.

Feb. 2, 1949.

Whitworth. Stokes, of Nashville, Tenn., and Frank J. Glankler, of Memphis, Tenn. (Whitworth Stokes, of Nashville, Tenn., and Frank J. Glankler (of Canale, Glankler, Loch & Little), of Memphis, Tenn., on the brief), for appellant.

Sam P. Walker, of Memphis, Tenn. (Sam P. Walker (of Waring, Walker & Cox), of Memphis, Tenn., on the brief), for appellee.

Before HICKS, Chief Judge, and McALLISTER and MILLER, Circuit Judges.

HICKS, Chief Judge.

This was a libel suit. Appellant, Riley, on August 13, 1946, filed his complaint, in which he charged appellee, Dun & Bradstreet, Inc., with publishing libelous matter about him in certain credit reports. The original complaint was followed by two amended complaints and by a substituted complaint filed on July 11, 1947. On motion of appellee the cause was dismissed upon the ground that the substituted complaint failed to state a cause of action. The parties agreed that the sufficiency of the substituted complaint was the only issue before the court.

This appeal is from the order of dismissal.

All statements of allegations are taken from the substituted complaint. Count I alleged that prior to 1942 the plaintiff and his wife operated businesses for the repair, reconditioning, etc., of steel storage tanks; that in that year he was operating at Springfield, Ill., and that since then as a citizen and resident of Memphis, Tenn., he had operated throughout the United States as Dixie Tank & Bridge Company; that as an inducement to customers he made guarantees with reference to his work and that his success in obtaining contracts depended upon his ability to make good his guarantees. He further alleged that his credit was excellent and that no question as to his business integrity had been raised prior to the matters thereinafter alleged.

He alleged that appellee was a mercantile agency issuing credit reports and collecting and supplying credit information to subscribers generally throughout the United States; that prior to 1942 appellee reported his credit history and that of his wife favorably and truthfully, including his change of name in 1942 from Peitzman to Riley; that he and his wife subscribed to the service and supplied information requested.

He further alleged that in the summer of 1943 appellee abruptly changed its reports with reference to appellant and included libelous matter in what purported to be a factual report; that in the report of January 4, 1944, it stated the following:

"Records of the Circuit Court of Taylorville, Ill., show that William Peitzman was indicted in November, 1921, for violation of the prohibition act, case No. 6709. This case was nolle prosequied September 17, 1923. Records of the same court show that William Peitzman was again indicted for violation of the prohibition act, case No. 1903, and that he pleaded guilty to Counts 3 and 5, while Counts 1, 2 and 4 were nolle prosequied, on motion of the state's attorney. He was released on bail and later discharged. Records of the same court show that * * * Peitzman was indicted for resisting an officer, case No. 1904. This indictment was nolle prosequied November 29, 1922.

"Records of Christian County Circuit Court, Taylorville, Ill., show that in March, 1924 * * * Peitzman was indicted for burglary and larceny, case No. 7806. On March 26, 1926, the case was stricken with leave to reinstate."

It appears that the report of October 9, 1944 was almost identical with that of Jan-

uary 4th just quoted except that it showed case No. 6709 was nolle prosequied on September 17, 1943, and that No. 1904 was nolle prosequied on November 29, 1942. It further appears that a second report of October 9, 1944 continued to show that case No. 6709 was nolle prosequied September 17, 1943, and indictment No. 1904 on November 29, 1942, and amplified the second paragraph of the January 4, 1944 report, by the addition at the end thereof of the following sentence, to wit: "Riley attributed these mistakes of his youth to his early environment, and claims that there were extenuating circumstances in each of the cases indicated by the fact that most of the charges against him were dropped."

It alleged that on May 26, 1945 appellee issued a report which modified previous reports, but which stated:

"Records of the Circuit Court, Taylorville, Illinois show that * * * Peitzman was indicted in November, 1921, for violation of the prohibition act, case No. 6709 (also known as case No. 1903) involving five counts * * * pleaded guilty to * * * 3 and 5, * * * 1, 2 and 4 were nolle prosequied. * * * He was released on bail and later discharged. Records * * * also show that * * * Peitzman was indicted at the same time for resisting an officer, case No. 1904 * * * nolle prosequied November 26, 1942.

"Records * * * Taylorville * * * show that in March 1924 * * * Peitzman was indicted for burglary and larceny, * * * No. 7806. On March 26, 1926 the case was stricken with leave to reinstate. Riley attributes this mistake of his youth to his early environment, and claims there were extenuating circumstances in each of these cases."

The report issued on June 22, 1946, although containing some minor changes, varied in only one particular, i. e., the date for nolleing the indictment for resisting an officer again appeared as "November 29, 1922."

It alleged that appellee published numerous copies of the reports which were seen by subscribers and nonsubscribers of its service; that the statements that cases Nos. 6709 and 1904 were nolled respectively on September 17, 1943 and November 29, 1942, were false and known by appellee to be false; that matter as to the indictments was of public record prior to 1943 in Taylorville and could have been known by appellee to be false; that matter as to the indictments was of public record prior to 1943 in Taylorville and could have been known by appellee by the most casual investigation and would have revealed that the violation of the Prohibition Act involved a wine making episode by appellant and some other boys; that none was made for sale; that no criminal intent was shown, and that appellant was placed on probation and discharged; and would further have revealed that case No. 1904 for resisting an officer did not involve appellant at all but another person by the same name, and that the prosecutor, Henry Pfan, in case No. 7806 for larceny of chickens, openly stated that appellant had nothing to do with the theft and was not guilty as charged.

It further alleged that the reports of October 9, 1944, May 26, 1945, and June 22, 1946, carrying the statement to the effect that Riley attributes these mistakes of his youth to his early environment and states there were extenuating circumstances, were false, but, that on the contrary, he was not guilty except in the wine making case and he denied criminal intent as to that.

It further alleged that all of these matters could have been known by appellee prior to the summer of 1943 and that their inclusion in the reports was malicious and for the sole purpose of injuring appellant; *that all the reports were written and that each of the subsequent reports referred back on its face to all prior reports and thus reestablished them, and that all such reports were continuously circulated by appellee and others to whom they had been furnished up to the date of the suit.*

One of the grounds upon which the court sustained appellant's motion to dismiss was that the reports of June 4th and October 29, 1944 and of May 26, 1945, were barred by the statute, Williams' Code of Tenn. Sec. 8595, limiting the bringing of actions for libel to within one year after the cause of

action accrued. For convenience, we dispose of this matter here.

■ In view of the allegations of the substituted complaint next above, which we have italicized, that on June 22, 1946, less than two months before appellant's action was commenced, there was in substance a re-publication of earlier reports, we think that the court was in error. An authorized repetition or successive publication of libelous matter affords in itself a right of action. Harris v. Nashville Trust Co., 5 Tenn.Civ.App. 678, 680.

The substituted complaint further alleged that appellee reported on May 26, 1945, the following:

"In certain instances litigation has resulted from the manner in which some of the jobs undertaken are alleged to have been performed.

"Records of the U. S. District Court of Cape Girardeau, Missouri show that the city of Illmo, Missouri, brought an action against E. H. Peitzman and William Peitzman d/b/a U. S. Elevated Tank Maintenance Company to recover for damages to its property alleged to have been done by the defendants in performing certain work upon plaintiff's water tank and standpipes. After trial before a jury, verdict was rendered on April 29, 1943, in favor of the plaintiff, assessing the defendants $4,000 actual and $10,000 punitive damages. Defendant appealed to the U. S. Circuit Court of Appeals, St. Louis, Missouri, and on April 17, 1944, Judge Gardner of that court, handed down a decision affirming the judgment of the District Court [Peitzman v. City of Illmo, 141 F.2d 956.]"

The complaint alleged that up to June 28, 1946, appellee continued to report this judgment as outstanding against appellant when the records of the District Court showed satisfaction of the judgment on March 5, 1945, and appellant so informed appellee's District Manager at Memphis and advised him that the fact could be verified by court records or his own receipts and records; that appellee in falsely reporting an unpaid judgment for over a year negatived the ability of appellant to make good or carry out the guarantee so essential to his business and maliciously imputed that appellant was insolvent.

It further alleged that such reports were the direct cause of the cancellation of many contracts and of his inability to negotiate contracts with many prospective customers; that the reports were disseminated among various customers of appellant and others with whom he had business dealings; that as a result of these false and malicious accusations which were libelous per se, appellant has suffered loss, has been held up to scorn and ridicule, and has had his credit affected; and he demands damages in the sum of $250,000.

Count II of the complaint adopted all the allegations of the first count and alleged special damages through loss of public esteem, impairment of credit and the loss and cancellation of contracts. It reiterated that the departure in the method of reporting was the result of a deliberate attempt to injure appellant in his business.

It alleged that appellant is unable to state with complete particularity all the contracts lost by reason of the dissemination of the false and libelous matter but lists the Newport Industries of Pensacola, Fla., in October 1944, Rockdale, Texas, in March 1944, Collins & Aikman Corp., Roxboro, N. C., in May 1945, the Town of Forrest, Miss., in January 1947, the Sarasota Bay Country Club in February 1947, and others. It alleged that in April 1946 appellant was prevented from obtaining a bond from U. S. Fidelity & Guaranty Company without full collateral because appellee's report showed an unpaid judgment against him in the City of Illmo case, and listed other instances of embarrassment arising from the false, malicious and libelous reports issued by appellee, implying that appellant was insolvent and unable or unwilling to meet his obligations.

■ On the motion to dismiss, the allegations of the complaint must be taken as true and from this viewpoint our principal question is, whether the reports contained matter libelous per se.

■ Laying to one side the question of appellee's right to publish reports that appellant had been indicted for various crim-

inal offenses, the crux of the complaint is in the charge that appellee published and circulated false reports that "Riley attributed these mistakes of his youth to his early environment and claims that there were extenuating circumstances in each case. * * *" This statement is not to be taken in mitiori sensu but in the plain and popular sense in which readers would naturally understand it. Hancock v. Stephens, 30 Tenn. 507. We think it is undoubtedly true that if interested persons read the reports as a whole they might naturally conclude that appellant was not only indicted for the commission of more than one crime and certainly of crimes which under the laws of Tennessee are felonies, namely burglary and larceny, but that he was undertaking to condone his offenses by reason of his early environment and extenuating circumstances. It follows that the report taken as a whole is upon its face and without the aid of extrinsic proof, injurious and defamatory per se. Hinson v. Pollock, 159 Tenn. 1, 15 S.W.2d 737.

We need not stop with this general statement since in Fry v. McCord Bros., 95 Tenn. 678, 684, 33 S.W. 568, 570, the court, after quoting from Townsend on Slander and Libel, 4th Ed., Sec. 146, and Newell on Defamation, p. 181, sec. 14, and citing Bank v. Bowdre, 92 Tenn. 723, 736, 23 S.W. 131, concludes that: "We think a statement in substance and effect the same, but in different language, is that words which upon their face, and without the aid of extrinsic proof, are injurious, are libelous per se; but if the injurious character of the words appear, not from their face, in their usual and natural signification, but only in consequence of extrinsic circumstances, they are not libelous per se."

This opinion by Judge Wilkes in Fry v. McCord, supra, was expressly approved by us in Memphis Telephone Co. v. Cumberland Telephone & Telegraph Co., 6 Cir., 145 F. 904.

Further, in Dawson and Campbell v. Holt, 79 Tenn. 583, 591, 47 Am.Rep. 312, it was held that a publication which contained a single false libelous statement was a libel, although it contained other defamatory statements which were true.

In its motion to dismiss appellee points out that the complaint contains no allegation that the statement with reference to the indictments was false but this is beside the point. Appellant does not deny that he was indicted but he does charge that the report that he attributed "these mistakes" to his youth, etc., was falsely made, and upon proof of the publication of such defamatory matter, the law will presume that it was false. Hinson v. Pollock, supra.

Appellee in its brief argues that, as a mercantile agency, issuing credit reports, it was justified in reporting the indictments against appellant because they were matters of public record; but justification means privilege, or at least what is denoted in law as qualified or conditional privilege. We need not enter into a discussion of what constitutes the qualified privilege of a commercial reporting agency in the publication of its reports. There is a full discussion of the general subject in Southern Ice Co. v. Black, 136 Tenn. 391, 403, 189 S.W. 861, Ann.Cas.1917E, 695.

In determining whether appellee was privileged in publishing the defamatory matter complained of, the principal question is, whether it acted in good faith and without express malice. On the motion to dismiss we cannot say as a matter of law that it did so act. The complaint avers that it acted maliciously and sets forth in detail allegations which we have noted but do not here repeat and which, if proved, would establish that averment. In addition, the complaint alleges that appellee published the reports with such reckless indifference to and disregard for the truth and interest of appellant as to warrant the conclusion that they were maliciously made. Further, it must be kept in mind that it is well settled law in Tennessee that a statement of facts in a complaint which is libelous on its face carries with it a presumption of malice as a matter of law. Mattson v. Albert, 97 Tenn. 232, 36 S.W. 1090; Saunders v. Baxter, 53 Tenn. 369, 382.

The law requires that all such matters should be submitted to a jury so that it may determine whether the privilege claimed by appellee should stand or fall. See Douglass v. Daisley, 1 Cir., 114 F. 628, 633; Bank v. Bowdre Bros., supra, 92

Tenn. at page 731, 23 S.W. at page 131, and especially Saunders v. Baxter, supra, 53 Tenn. at page 382.

We do not take appellant's view of the incomplete report of the City of Illmo proceedings. Appellant does not complain that appellee reported that he was sued and a judgment obtained against him, but that appellee for over a year falsely reported an unpaid judgment against him. The report was false, since it stated that the judgment had been appealed to the United States Supreme Court where it was understood it was still pending, when the fact was, that when it was issued (May 26, 1945), certiorari had already been denied and the judgment paid. 323 U.S. 718, 65 S.Ct. 47, 89 L.Ed. 577. But a false statement that the matter was on appeal does not carry the adverse connotation that the judgment remained unpaid because appellant was refusing, neglecting or unable to pay it. To be sued or to take an appeal is normal and no disgrace. We cannot believe that business men with whom appellant was dealing would have read into the statement an inference adverse to his credit standing.

There remains the question whether Count II sufficiently alleged special damages. The statute of limitations for libel in Tennessee is one year after the cause of action accrued, Williams' Tenn.Code, Sec. 8595, and it accrued upon the date the alleged defamatory language was published. See Brownlow v. Jones, 33 Tenn. 170.

As we have noted, Count II charged special damages in the loss of certain specific contracts and in specific embarrassment in the matter of making bonds, purchases, etc. Obviously, an action for damages for the loss of contracts was barred where the loss occurred more than a year prior to the filing of the original complaint. We do not think that alleged losses of contracts accruing after the date of the original complaint, but before that of the substituted complaint, were improperly pleaded since the substituted complaint was in effect an amendment of the original.

Appellee insists that the allegations of Count II are insufficient since there is no allegation of loss, or if so, how produced.

In Benton, Admx. v. Knoxville News-Sentinel Co., 174 Tenn. 661, 667, 130 S.W. 2d 106, 108, the Supreme Court of Tennessee said that: " * * * special damages must be pleaded with particularity so that the defendant may be able to contradict it if untrue." Count II listed certain contracts and the dates on which they were lost and specific embarrassments in the matter of making bonds, obtaining credit, etc., with the dates on which they occurred. We think that these allegations of special damages are sufficiently particular, especially on a motion to dismiss, to comply with the rule in the Benton case, supra. However, what we have said touching the necessity for the averment and proof of special damages is applicable only to cases wherein the alleged defamatory language is not actionable per se.

The judgment is reversed and the cause remanded for trial on Counts I and II with the exception of the matter pleaded in paragraph 7 of Count I relating to the City of Illmo suit and with the further exception as to Count II of those allegations of damages which we have indicated were barred by the statute of limitations.