Paul SHELL, Betty Stimpson and Jeff
Stimpson, Claimants–Appellants,

v.

STATE of Tennessee, Respondent–
Appellee.

Supreme Court of Tennessee,
at Jackson.

Jan. 17, 1995.

Rehearing Denied Feb. 21, 1995.

Hal Gerber and Ronald D. Krelstein, Memphis, for Paul Shell.

Michael W. Whitaker, Covington, for Jeff Stimpson.

Langdon S. Unger, Jr., Martin, for Betty Stimpson.

Charles W. Burson, Atty. Gen. & Reporter, Michael E. Moore, Sol. Gen., Michael W. Catalano, Associate Sol. Gen., Nashville, for respondent-appellee.

## OPINION

DROWOTA, Justice.

Paul Shell, Betty Stimpson and Jeff Stimpson appeal from the Court of Appeals' affirmance of the dismissal by the Tennessee Claims Commission of their action against the State of Tennessee for negligent deprivation of a constitutional right. The appellants' lawsuit is based on alleged prosecutorial misconduct in the investigation of reports of child sexual abuse in a day care center; this investigation ultimately led to the indictment and prosecution of the appellants for multiple sexual offenses. This appeal presents two issues for our review: (1) whether the appellants' action, which was filed in October 1989, was viable at that time in light of the legislature's repeal in May 1989 of the language in Tenn.Code Ann. § 9–8–307(a)(1)(N) authoriz-

ing suits against the State for the negligent deprivation of constitutional rights; and (2) assuming that a cause of action for the negligent deprivation of constitutional rights did exist at the time this action was filed, whether the statutory period of limitations on the action had expired when the appellants filed their action in October 1989.

## FACTS AND PROCEDURAL HISTORY

During the early 1980's, these appellants were involved in various capacities with the Georgian Hills Early Childhood Center, a day care facility operated by the Georgian Hills Baptist Church. Paul Shell was the minister of the church; Betty Stimpson was the director of the day care center; and Jeff Stimpson, Betty's son, was employed by the day care center on a part-time basis. In early 1984, reports of child sexual abuse by certain Georgian Hills employees began to surface. The Shelby County District Attorney's office, under the guidance of Assistant District Attorney Phyllis Gardner, launched an extensive investigation concerning these reports. This investigation, which was carried out by a "task force" consisting of employees of the city, county, and state governments, led to the arrest of a Georgian Hills employee, Frances Ballard, in June 1984. Ballard was later indicted on multiple counts of aggravated rape and aggravated sexual battery involving 19 different children. *See State v. Ballard,* 855 S.W.2d 557, 559 (Tenn. 1993). The day care center ceased its operations in September 1984.

In December 1984, the Shelby County Grand Jury issued subpoenas to Shell and Betty Stimpson, directing them to turn over the names and addresses of all the children who had attended Georgian Hills for the relevant time period. Shell and Stimpson complied with the subpoenas. In their complaints, Shell and Betty Stimpson state that they were not warned by the district attorney that they were suspects in the investigation at that time.

After being apprised of the results of the district attorney's investigation, the grand jury charged Shell, Betty Stimpson, and Jeff Stimpson in May 1985 with several sexual

abuse offenses. The ensuing criminal prosecutions of Shell and the Stimpsons continued for a period of over three years. During this period, Betty and Jeff Stimpson were tried on various counts in their indictments; their trials, however, failed to produce any convictions. After Jeff Stimpson was acquitted on four counts of aggravated rape in October 1988, the district attorney dismissed all the remaining charges against the appellants on October 28, 1988.

On October 17, 1989, Betty and Jeff Stimpson filed a complaint with the division of claims administration pursuant to Tenn.Code Ann. § 9–8–307(a)(1)(D) and (N), alleging that Gardner had committed professional malpractice and had deprived them of their constitutional rights to due process of law because of her negligence in handling the investigation and prosecution of their cases. Specifically, the Stimpsons alleged that Gardner had committed prosecutorial misconduct by: (1) disseminating the names of alleged victims to private attorneys, thereby causing the Stimpsons and the day care center to be bombarded with civil lawsuits; (2) using improper interviewing techniques to pressure children into reporting that they had been molested; (3) withholding exculpatory evidence from the grand jury; and (4) ordering the members of the task force to destroy tapes of the initial interviews of the children so that the tapes would be unavailable for inspection by the defense counsel. Shell filed a substantially similar complaint on October 27, 1989. Because the division of claims administration was unable to act upon the complaints within ninety days, the claims were transferred to the Claims Commission for resolution pursuant to Tenn.Code Ann. § 9–8–402(c).

The Claims Commission dismissed the complaint,[1] holding that both causes of action had accrued prior to October 17, 1988, and were therefore barred by the one-year statute of limitations for personal injury actions. Tenn.Code Ann. § 28–3–104. The Court of Appeals affirmed the ruling of the commissioner. We granted the appellants' Rule 11

application for the limited purpose of deciding the two questions enunciated in the beginning of this opinion.[2]

*I.*

■■■ Before we address the statute of limitations question, we must first determine whether a cause of action existed for the negligent deprivation of a constitutional right on October 17, 1989—the date of the Stimpson complaint. Although this issue was not raised below, it is properly reviewable by this Court because its answer determines whether the Claims Commission had subject matter jurisdiction over these claims in the first instance. Tenn.R.App.P. 13(b).

In May 1984, the General Assembly enacted legislation which waived the State's sovereign immunity under certain conditions. Acts of 1984, ch. 972, 1984 Tenn.Pub.Acts 1026 (now codified at Tenn.Code Ann. § 9–8–307). In this act, the legislature created the Tennessee Claims Commission to hear certain claims against the State; one of the claims the commission was designated to entertain was for the "negligent deprivation of statutory or constitutional rights." Acts of 1984, ch. 972, § 8(a)(14), 1984 Tenn.Pub. Acts 1026, 1030. This section was eventually codified at Tenn.Code Ann. § 9–8–307(a)(1)(N). In May 1989, as part of an act modifying several provisions of § 9–8–307, the General Assembly deleted the words "or constitutional" from § 9–8–307(a)(1)(N). Acts of 1989, ch. 491, § 1, 1989 Tenn.Pub.Acts 853, 854.

The State argues that the 1989 amendment should be applied retroactively so as to bar the appellants' lawsuit. The State argues that the cause of action for the negligent deprivation of constitutional rights was created by the legislature in response to the United States Supreme Court's decision in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), in which the Court held that the negligent deprivation of an individual's constitutional rights could, in an appropriate case, give rise to a claim under 42 U.S.C. § 1983. The State asserts that,

---

1. Because the parties' claims were so similar, the Claims Commission consolidated the complaints.

2. We express no opinion as to the validity of the appellants' cause of action based on professional negligence.

because the legislature was attempting to encourage plaintiffs to file claims in the Claims Commission in lieu of bringing § 1983 actions against state employees, it created the cause of action.

However, in *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) the Supreme Court overruled *Parratt* and held that mere negligence of the part of state officials does not implicate the due process clause, and therefore does not state a cause of action under § 1983. The State asserts that because of *Daniels,* the legislature deleted the words "or constitutional" from § 9–8–307(a)(1)(N) in May 1989.

The legislative history of the 1989 amendment supports the State's explanation. One of the sponsors of the bill, Senator Riley Darnell, explained in the Senate floor debates that:

> T.C.A. 9–8–307(a)(1)(N) gives the Claims Commission jurisdiction over claims based on negligent deprivation of statutory or constitutional rights. This was done in part to encourage people to use the Claims Commission to file their lawsuits rather than going to federal court. Since we had done that, the United States Supreme Court has indicated that actions brought under 42 U.S.C. 1983 cannot be based on negligent conduct. Therefore, we're deleting the word "constitutional" from the bill so that negligent conduct is not one of those that would be brought in lieu of a 1983 civil rights action.

The State concludes that because § 9–8–307(a)(1)(N) was intended to mirror the requirements of a § 1983 action, and because the Supreme Court held that negligence cannot be the basis of a § 1983 action, the 1989 amendment should be retroactively applied to January 21, 1986—the date the *Daniels* decision was handed down.

▆ This argument must fail for a number of reasons. First, a basic rule of statutory construction provides that statutes are to be applied prospectively, unless the legislature clearly indicates to the contrary. *Woods v. TRW, Inc.,* 557 S.W.2d 274, 275 (Tenn.1977); *United Inter–Mountain Tel. Co. v. Moyers,* 221 Tenn. 246, 426 S.W.2d 177, 181 (1968); *Menefee Crushed Stone Co. v. Taylor,* 760

S.W.2d 223, 226 (Tenn.App.1988). Section 7 of ch. 491 states that "[t]his act shall take effect upon becoming a law, the public welfare requiring it." The act was passed by both houses on May 24, 1989; it was signed by Governor McWherter on June 1, 1989. It therefore became effective on that date, and there is nothing in the text of the act or in its legislative history to indicate that the legislature intended that it should be applied retroactively.

Moreover, although the legislative history does illustrate that one of the General Assembly's purposes in enacting § 9–8–307(a)(1)(N) was to provide plaintiffs with an alternative to § 1983, the statute did not by its express terms limit the action to the deprivation of *federal constitutional rights,* which is the exclusive concern of a § 1983 action. There is no indication in the legislative history of the bill that the provision was not intended to apply equally to the negligent deprivation of *state constitutional rights.* Therefore, the fact that § 9–8–307(a)(1)(N) was sensitive to changes in § 1983 jurisprudence does not mean that it ceased to have any legal effect after the *Daniels* decision was rendered.

The State alternatively asserts that the 1989 amendment is a remedial statute because it simply divested the Claims Commission of jurisdiction over this cause of action and placed it within the jurisdiction of the Board of Claims. The State contends that because remedial statutes may be applied to causes of actions that have accrued before the passage of the legislation, the appellants were barred from bringing their action in the Claims Commission.

▆ It is true that statutes affecting only the method or the procedure for prosecuting or defending a cause of action may be applied retroactively. *Saylors v. Riggsbee,* 544 S.W.2d 609, 610 (Tenn.1976); *Burton v. Borden Foods Co.,* 494 S.W.2d 775, 777 (Tenn.1972); *Morford v. Yong Kyun Cho,* 732 S.W.2d 617, 620 (Tenn.App.1987). A remedial or procedural statute is one that does not affect the vested rights or liabilities of the parties. Examples of remedial legislation are statutes concerning the venue of an

action, *Burton, Morford;* or statutes dealing with service of process, *Saylors.* Statutes that create a new right of recovery or change the amount of damages recoverable are, however, deemed to have altered the parties' vested rights and thus are not considered remedial. *Anderson v. Memphis Housing Authority,* 534 S.W.2d 125, 127–28 (Tenn. App.1975); *School Commissioners v. State,* 26 Tenn. 113 (1846).

■ The effect of the 1989 amendment cannot be fairly characterized as "remedial." Although the Board of Claims does have residual jurisdiction over claims falling outside the jurisdiction of the Claims Commission, Tenn.Code Ann. § 9–8–108(a)(1), the Board of Claims is not *required* to hear any claim that is presented to it; its authority to hear claims is *purely discretionary.* § 9–8–108(a)(1). There is no statutory authority to appeal from the Board's decision not to hear a claim. Moreover, a decision on the merits of the claim rendered by the Board of Claims is not appealable, § 9–8–108(a)(1), whereas a final decision rendered by the Claims Commission is appealable to the Court of Appeals. Tenn.Code Ann. § 9–8–403(a)(1). Therefore, it is clear that once the Claims Commission is divested of jurisdiction over a particular claim, the plaintiff no longer possesses an unqualified right to have a state administrative tribunal determine the merits of the claim.

■ This is crucial because of the constitutional and statutory limitations on a plaintiff's ability to bring an action against the State. The State of Tennessee is immune from suit for money damages in federal court by virtue of the Eleventh Amendment to the United States Constitution. *Chadhuri v. Tennessee,* 767 F.Supp. 860, 862–63 (M.D.Tenn.1991). Moreover, the State is immune from suit in a state court unless the legislature specifically provides to the contrary. Tenn. Const. Art. I, § 17; Tenn.Code Ann. § 20–13–102; *Brewington v. Brewington,* 215 Tenn. 475, 387 S.W.2d 777, 779 (1965); *Greenhill v. Carpenter,* 718

S.W.2d 268, 270 (Tenn.App.1986). Because of these restrictions, and the statutory provisions concerning the Board of Claims, the legislature's removal of this cause of action from the jurisdiction of the Claims Commission is functionally equivalent to a complete repeal of the cause of action. Therefore, the 1989 amendment cannot be considered remedial or procedural. And it cannot serve to bar the appellants' cause of action, which had accrued before June 1, 1989—the effective date of the amendment.

## II.

■ Having decided that a cause of action for the negligent deprivation of a constitutional right did exist in the Claims Commission as of October 17, 1989, we must now decide when the cause of action accrued for statute of limitations purposes. The appellants argue that we should adopt a rule similar to that used in malicious prosecution actions and hold that the action does not accrue until the plaintiff is vindicated by the judicial process [3]—in this case, on October 28, 1988, the date the indictments were dismissed. The appellants argue that requiring a criminal defendant to bring the action before vindication is illogical and wasteful of judicial resources because if the defendant is convicted, he could claim no damages for any prosecutorial misconduct. The appellants also point out that in order to avoid "inconsistent judgments" (presumably a judgment for the plaintiff in the civil action and a judgment of conviction in the criminal prosecution), the trial court in the civil action would invariably stay the proceedings pending the outcome of the criminal prosecution. Therefore, the appellants argue, a rule requiring the plaintiff to file before the criminal proceedings terminate in his favor is a practical nullity that will needlessly burden scarce judicial resources.

The State replies that this action, although based on the deprivation of constitutional rights, is nevertheless a negligence action and should be analyzed accordingly. It argues that established principles of negligence

---

3. One of the elements of a malicious prosecution action is that the underlying action has terminated in favor of the plaintiff. *See, e.g., Donaldson v. Donaldson,* 557 S.W.2d 60, 62 (Tenn.1977); *Kauffman v. A.H. Robins Co.,* 223 Tenn. 515, 448 S.W.2d 400, 402 (1969); *Dunn v. Tennessee,* 697 F.2d 121, 125 n. 4 (6th Cir.1982).

law require the action to be brought within a year of the defendant's breach of a legal duty owed to the plaintiff. It concludes that this cause of action accrued when the indictment was handed down because the prosecutor allegedly breached the appellants' due process rights during the pre-indictment investigation of the case.

 We find the State's contentions generally persuasive.[4] Although the appellants' policy arguments are somewhat attractive from a practical standpoint, they are ultimately based on a faulty premise: that this action can or should be analogized to malicious prosecution actions. The legislature definitely did not intend to subject the State to such claims: the Claims Commission does not have jurisdiction over malicious prosecution claims; in fact, it does not have jurisdiction over any intentional torts. Tenn. Code Ann. § 9–8–307(a). Moreover, although state officers and employees are liable in their individual capacities for malicious acts, Tenn.Code Ann. § 9–8–307(h), it is settled that prosecutors are immune from actions for malicious prosecution under both § 1983, *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), and state common law, *Willett v. Ford,* 603 S.W.2d 143 (Tenn.App.1979). Because of the unequivocal legislative and judicial pronouncements regarding the availability of an action for malicious prosecution against prosecutors, it would be improper to selectively incorporate certain elements of that cause of action into this negligence action.[5] We therefore hold that the issue of when this cause of action accrued is to be determined by reference to generally applicable principles of negligence law.

This determination effectively decides the question, for although we have never directly addressed the issue of when an action for the negligent deprivation of a constitutional right accrues, the basic principles governing that issue are clear. For example, in *Windsor v. A Federal Executive Agency,* 614 F.Supp. 1255 (M.D.Tenn.1983), *aff'd without opinion,* 767 F.2d 923 (6th Cir.1985), the plaintiff brought an action against the United States Department of Justice and its agents for, *inter alia,* the deprivation of his Fifth Amendment Due Process rights. The plaintiff's specific allegation was that the named agents had wrongfully disseminated false information to the Tennessee Board of Professional Responsibility, thereby causing disciplinary proceedings to be brought against him.

The District Court for the Middle District of Tennessee held that the plaintiff's constitutional claims were barred by Tennessee's one-year statute of limitations for personal injury actions. The Court reasoned as follows:

> The plaintiff alleges that the defendants committed their wrongful acts in November 1981; however, this action was not commenced until June 28, 1983, well more than 1 year after the defendants are alleged to have disseminated wrongfully the Thoresen-affidavit. In an obvious effort to avoid the bar of the statute of limitations, Mr. Windsor alleges (in his complaint) that
>
> * * * [t]he oppressive result of Defendants' conduct remained in effect upon the plaintiff until November of 1982, when the alleged charge was dismissed

---

4. We are not persuaded that any action for prosecutorial misconduct, such as a § 1983 action, inevitably accrues when the indictment is handed down. *See* p. 423, *infra.*

5. The *dissent* engages in this selective incorporation by first citing several federal cases which analogize a § 1983 action to a state malicious prosecution action, and then concluding that: "[t]he cause of action alleged in the case before the Court *is similar to those actions brought under Section 1983 in which the federal courts have found the cause of action does not accrue until the claimant has been absolved of any criminal liability."* *Dissent,* at 428 (emphasis added).

The dissent's analysis, however, ignores the fact that the action before us is not based on § 1983. Moreover, the section relied upon by the appellants, § 9–8–307(a)(1)(N), explicitly provides an action against the State for negligence; it makes no mention whatsoever of malicious prosecution. Finally, as discussed above, it is well-settled that a plaintiff may not bring a malicious prosecution against either the State or against a prosecutor individually. Therefore, the *dissent's* reliance upon the malicious prosecution analogy, however well-grounded in policy, is simply unwarranted in light of the statutory and judicial pronouncements militating against such an analogy.

by the Board. Plaintiff brought this action within one year therefrom * * * He, thus, appears to contend his action was timely because (1) his cause of action accrued—not in November, 1981, when the defendants acted—but in November 1982, when the effect of their conduct ceased to have an effect upon the plaintiff; or (2) the running of the statute of limitations was tolled, or suspended, during the period that the conduct of the defendants remained in effect upon him.

The Court finds no support whatever for the proposition that Mr. Windsor's cause of action did not accrue until November, 1982, a year after the defendants are alleged to have disseminated wrongfully the false information. The plaintiff cited no authority supporting such a notion, and the Court's independent research disclosed none.

Under the law of Tennessee, a cause of action accrues when the plaintiff suffers in actuality a legally-cognizable wrong and thus acquires a right to bring suit for redress. *Hodge v. Service Machine Co.,* 438 F.2d 347, 349 (6th Cir.1971); *Vason v. Nickey,* 438 F.2d 242, 246 (6th Cir.1971); *Armistead v. Clarksville–Montgomery County Sch. Sys.,* 222 Tenn. 486, 437 S.W.2d 527, 528–29 (1969). Where, as here, it is alleged that the defendants disseminated wrongfully untruthful information about the plaintiff, the cause of action accrues, and the statute of limitations begins to run, at the time such dissemination takes place. *Riley v. Dun & Bradstreet,* 172 F.2d 303, 308 (6th Cir.1949); *Heller v. Smither,* 437 F.Supp. 1, 4–5 (D.C.Tenn. 1977), *aff'd,* 578 F.2d 1380 (6th Cir.1978); *Applewhite v. Memphis State University,* 495 S.W.2d 190, 195 (Tenn.1973).

The Supreme Court has held (in an action brought under 42 U.S.C. § 1983, *supra* ), that the applicable state statute of limitations begins to run at the time of the alleged wrongful conduct, not at the point when the consequences of the conduct became painful. *Chardon v. Fernandez,* 454 U.S. 6, 7, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981). That being so, it can hardly be said that the statute of limitations does not begin to run until the result of the wrongful conduct ceases to have an effect on the plaintiff.

614 F.Supp. at 1262–63.

With the applicable principles in mind, the first step in our analysis is to determine what conduct, if any, of the defendant in this case could have given rise to a legally cognizable injury. The United States Supreme Court, in *Burns v. Reed,* 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991), and *Buckley v. Fitzsimmons,* 509 U.S. ——, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993) has provided the answer: a prosecutor is potentially liable (in other words, possesses only qualified, rather than absolute, immunity) for actions taken in an investigative or administrative capacity, but not in his capacity as an advocate for the State.[6] Applying the *Burns/Buckley* rule to this situation, the appellants have stated several legally cognizable injuries. Among these include the prosecutor's dissemination of the names of the alleged victims to private attorneys, the improper interviewing techniques during the initial investigation, and the destruction of the tapes of the initial investigation.

It is, however, abundantly clear that all of these injuries occurred well before October 17, 1988—one year before the Stimpson's complaint was filed. Moreover, the appellants do not argue that they were unaware of these illegal actions. Indeed, there is ample evidence in the record that the appellants knew of the prosecutor's wrongdoing. In November 1985, the appellants filed a motion to exclude the prosecutor from participation in the case because of her mishandling of the investigation. Moreover, the affidavit of two attorneys representing the appellants states that they learned in late 1986, during the

---

**6.** *Burns* and *Buckley* are § 1983 actions. They are relevant to this action because § 1983 incorporates the common-law immunities historically granted to governmental officers; and Tenn. Code Ann. § 9–8–307(g) provides that "no language contained in this chapter is intended to be construed to abridge the common-law immunities of state officials and employees." *See also Willett v. Ford,* 603 S.W.2d 143 (Tenn.App.1979) (immunities recognized in § 1983 applicable to common law actions against prosecutors).

course of discovery in the related civil cases, that the prosecutor had instructed members of the task force to record over the tapes of the initial interviews. This statement is supported by the fact that the appellants filed motions in the trial court in late 1986 and early 1987 requesting the court to order the State to turn over all exculpatory evidence. Thus, there is no question that the appellants knew of the injuries well before October 17, 1988.

 Although we hold that this lawsuit is barred by the statute of limitations, we do not hold that any possible cause of action for prosecutorial misconduct—such as a § 1983 action—invariably accrues upon the return of an indictment. While it is more likely that a prosecutor will be acting as an advocate rather than an investigator after the defendant is formally indicted, it is theoretically possible that the prosecutor could still perform acts of an investigative nature after the indictment. *See Buckley v. Fitzsimmons,* 509 U.S. ——, —— n. 5, 113 S.Ct. 2606, 2616 n. 5, 125 L.Ed.2d 209 (1993). In such a case, the plaintiff would not have suffered a legally cognizable injury until after the indictment was returned. Therefore, we hold that the accrual of the cause of action depends on when the plaintiff has suffered a legally cognizable injury.[7]

7. While the cause of action for negligent deprivation of constitutional rights no longer exists, this holding is nevertheless important because the statutory period of limitations for § 1983 actions is controlled by state law. Tenn.Code Ann. § 28–3–104; *Harrison v. Wright,* 457 F.2d 793 (6th Cir.1972).

1. T.C.A. § 9–8–307(a)(1)(N) (1992), as amended in 1989 (Acts of 1989, Chapter 491, Section 1) still permits claims against the State for "negligent deprivation of statutory rights." Consequently, the Court's opinion in this case is not limited to constitutional claims under that statute which arose prior to the 1989 amendment. Further, I would express no opinion as to the validity of the rationale which the state contends prompted the repeal of that portion of T.C.A. § 9–8–307(a)(1)(N) which referred to constitutional rights. Relief was denied in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), because "the state of Nebraska has provided respondent with the means by which he can receive redress for the deprivation. The

The judgment of the Court of Appeals is affirmed.

ANDERSON, C.J., BIRCH, J., and O'BRIEN, Special Justice, concur.

REID, J., dissents. See separate opinion.

REID, Justice, dissenting.

I dissent because, in my opinion, the Court's decision denies those persons oppressed by the negligent conduct of public officials an effective means of vindicating the violation of their civil rights; and, also, because the opinion permits a defendant in a criminal case to compromise the prosecution of that case by commencing a civil action for damages against the prosecuting attorney and others prior to the conclusion of the criminal proceedings.

I agree with the holding by the Court that, pursuant to T.C.A. § 9–8–307(a)(1)(N), a cause of action for the negligent deprivation of a constitutional right, triable in the claims commission, did exist in Tennessee prior to the date on which that statute was amended.[1]

I do not agree that the causes of action in this case accrued prior to October 28, 1988, the date on which the State dismissed the criminal actions against the claimants, and were, as held by the majority, barred by the statute of limitations when the claims were filed.

State provides a remedy to persons who believe they have suffered a tortious loss at the hands of the State." *Parratt,* 451 U.S. 527, 101 S.Ct. at 1917. In *Daniels v. Williams,* the Court noted:

Accordingly, we need not decide whether, as petitioner contends, the possibility of a sovereign immunity defense in a Virginia tort suit would render that remedy "inadequate" under *Parratt* and *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). 474 U.S. 327, 332, n. 1, 106 S.Ct. 662, 666, n. 1 (1986). The Court also stated,

this case affords us no occasion to consider whether something less than intentional conduct, such as recklessness or "gross negligence," is enough to trigger the protections of the Due Process Clause.

*Id.* at 334, n. 3, 106 S.Ct. at 667, n. 3. In *Nishiyama v. Dickson County, Tennessee,* 814 F.2d 277, 282–283 (6th Cir.1987), the Sixth Circuit held that "gross negligence" or "reckless indifference" may establish a violation of the Due Process Clause. *But see Lewellen v. Metro Gov't of Nashville,* 34 F.3d 345, 350–51 (6th Cir.1994).

## 424

### I

Claimant Paul Shell was the minister of the Georgian Hills Baptist Church in Memphis, claimant Betty Stimpson was the director of the day care center operated by the church, and claimant Jeff Stimpson was employed by the day care center on a part-time basis. In early 1984, claims were made that children at the center were being sexually abused. The Shelby County District Attorney General's office, under the direction of Phyllis Gardner, an assistant district attorney, began an investigation of the charges. Gardner headed a "task force" which included personnel from various government agencies.

Based on the results of the investigation, the grand jury, in May 1985, returned indictments charging Shell, Betty Stimpson, and Jeff Stimpson on several counts of sexual abuse. However, despite several trials, none of the claimants were convicted. More than three years later, on October 28, 1988, after Jeff Stimpson had been acquitted on four counts of aggravated rape, the district attorney general dismissed all remaining charges.

On October 17, 1989, Betty and Jeff Stimpson filed claims with the division of claims administration, pursuant to T.C.A. § 9–8–307(a)(1)(D) and (N). The claimants alleged that the assistant district attorney general had deprived them of their constitutional rights to due process of law because of her negligence in handling the investigation and prosecution of the cases. The claimants do not contest the State's claim that as to her prosecutorial functions Gardner had immunity. They insist, however, that she continued to act in an investigative and advisory capacity until the charges had been dismissed. Specifically, the Stimpsons alleged that Gardner disseminated the names of alleged victims to private attorneys, thereby causing the Stimpsons and the day care center to be bombarded with civil lawsuits; used improper interviewing techniques which pressured children into reporting to the investigators

and the grand jury that they had been sexually abused; negligently failed to provide exculpatory evidence to the grand jury; negligently destroyed tapes of interviews with the children, which would have been useful by the defense at trial; negligently reported false information to other members of the district attorney general's office, the trial judge, and the public at large; and thereby violated their rights under the Fifth Amendment to the United States Constitution, and Article I, Section 8 of the Tennessee Constitution. The complaint alleges that the acts were committed during the period of time commencing in June of 1984 and ending on October 28, 1988. It further alleges that the acts were committed by the assistant district attorney general in a "negligent and grossly negligent manner."

Shell filed his complaint which was based on the same grounds, on October 27, 1989. The claims were transferred to the Claims Commission pursuant to T.C.A. § 9–8–402(c). The Claims Commission dismissed the claims, holding that the actions accrued prior to October 17, 1988, and were barred by the one-year statute of limitations. T.C.A. § 28–3–104.

### II

Since the case is before the Court on the State's plea of the statute of limitations, the date on which the causes of action accrued is the critical fact. The nature of the cause of action asserted in the complaint and the elements thereof, determine when the causes of action accrued, and, therefore, the date on which the time for initiating the actions expired.

The claimants contend that favorable termination of criminal proceedings is essential to their causes of action, therefore, their claims did not accrue until they had been vindicated by the dismissal of the indictments on October 28, 1988.[2]

---

2. The claimants also allege that the negligent conduct continued through the year preceding the filing of the complaint. However, neither the dates on which the civil actions against them were filed nor the dates on which false information was disseminated are stated specifically in the complaint. The complaint does state that the allegations cover negligent acts which spanned a period of time up to the dismissal of the criminal charges on October 28, 1988, thereby occurring within the limitations period. Under Rule 12 of the Tennessee Rules of Civil Procedure, applica-

The majority finds that "the issue of when this cause of action accrued is to be determined by reference to generally applicable principles of negligence law," (Majority Opinion, p. 420) and apparently holds that the causes of action accrued on the date the wrongful actions occurred. (Majority Opinion, p. 422).[3]

For present purposes, the important point in the majority opinion is that the dismissal of the criminal proceedings has no bearing on when the causes of action accrued. The majority treats the dismissal of the indictments as though it were an unrelated event, like the claimants being involved in an automobile accident with the prosecutor.

### III

Since the claims allowed against the State under Section 9–8–307 include various causes of action in contract and in tort, there is no single limitation of action applicable to all claims made pursuant to that statute. However, the disputed issue in this case is not the applicable statute of limitations, but the date on which the causes of action accrued. Claims pursuant to T.C.A. § 9–8–307(a)(1)(N) must be brought within one year. T.C.A. § 28–3–104; *Wilson v. Garcia,* 471 U.S. 261, 276, 105 S.Ct. 1938, 1947, 85 L.Ed.2d 254 (1985). The applicable period of limitations commences to run only when the particular cause of action asserted has accrued. In each case, it is necessary that the precise nature of the cause of action alleged be examined in order to determine when the cause of action accrued, and, therefore, when the statutory time within which suit may be filed commenced. This Court has not considered the elements of a cause of action for the negligent deprivation of a constitutional right, nor has it determined when the cause of action accrues. In *Swauger v. Haury &*

Smith Contractors, Inc., 512 S.W.2d 261, 262 (Tenn.1974), this Court stated,

> the applicable statute of limitations in a particular cause will be determined according to the gravamen of the complaint.

The gravamen of the complaint, therefore, determines when the action accrues and when the applicable statute starts to run.

The gravamen of the complaint is stated explicitly in the statute, the negligent deprivation of constitutional rights. Since negligence is the breach of a legal duty of care, the breach by a state official or employee of a duty of care imposed upon such person by the state or federal constitution constitutes a cause of action under Section 9–8–307(a)(1)(N). Tennessee courts have recognized such duty, its breach, and the resulting cause of action in only two cases. In *Bryson v. State,* 793 S.W.2d 252, 255 (Tenn.1990), this Court stated:

> The State insists that the claim does not sound either in negligence or in contract. T.C.A. § 9–8–307(a)(1)(N) (Supp.1988) gives the Commission the authority to hear claims arising from the negligent deprivation of statutory or constitutional rights. The Tennessee Department of Corrections is required by statute to furnish medical care to prisoners in its custody. As an inmate in a state correctional institution, Mr. Bryson had the statutory right to receive medical treatment at the State's expense. It follows that the Tennessee Claims Commission, under T.C.A. § 9–8–307(a)(1)(N), has jurisdiction to decide a claim brought by Mr. Bryson for deprivation for that statutory right.

In *Computer Shoppe, Inc. v. State,* 780 S.W.2d 729 (Tenn.App.1989), the Court of Appeals recognized the possibility of a cause of action under Section 9–8–307(a)(1)(N), based on the State's negligence in issuing an

---

ble to proceedings before the Tennessee Claims Commission pursuant to Rule 03101–1–.01 of the Rules of the Tennessee Claims Commission, allegations of negligent acts within the limitations period are sufficient to overcome a motion to dismiss grounded on the statute of limitations. *Cook v. Spinnaker's of Rivergate, Inc.,* 878 S.W.2d 934, 938 (Tenn.1994). Nevertheless, the claimants' position on appeal is that the causes of action accrued upon the dismissal of the indict-

ments, rather than any later date. Consequently, that is the only issue before the Court.

**3.** However, this is not consistent with the Court's subsequent caveat, "we do not hold that any possible cause of action for prosecutorial misconduct—such as a § 1983 action invariably accrues upon the return of an indictment." (Majority opinion, p. 422; *see also* pp. 417, 420.)

invitation to bid for certain computer equipment. However, neither of these cases is helpful in determining the issue before this Court, when the cause of action accrues.

Since the causes of action which may be brought under Section 9–8–307(a)(1)(N) are those for which immunity was waived by the legislature to provide a substitute for actions in negligence in federal courts pursuant to Section 1983, review of comparable cases under Section 1983 is instructive in determining when the causes of action accrued and the applicable period of one year began to run.

The United States Supreme Court had no occasion to discuss the determination of the applicable limitation of actions in either *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) or *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). However, in *Albright v. Oliver*, —— U.S. ——, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), in one of three concurring opinions, the issue was discussed. In that case, Albright was arrested on a charge which the trial court later found did not state an offense under state law. According to the facts as alleged in the complaint, it was clear that the defendant police officer knew or should have known that he did not have probable cause to arrest Albright. Albright filed a suit under Section 1983, alleging that the police officer deprived him of his right to substantive due process under the Fourteenth Amendment to be free from criminal prosecution except upon probable cause. The dismissal of the suit was affirmed by the Supreme Court upon a finding that Albright's claimed right to be free from prosecution without probable cause must be judged under the Fourth Amendment rather than the substantive due process provision of the Fourteenth Amendment. However, Justice Ginsburg, analyzing the allegations under the Fourth Amendment, which was not pleaded by the plaintiff, stated:

> Once it is recognized, however, that Albright remained effectively "seized" for trial so long as the prosecution against him remained pending, and that Oliver's testimony at the preliminary hearing, if deliberately misleading, violated the Fourth Amendment by perpetuating the seizure,

then the limitations period should have a different trigger. The time to file the § 1983 action should begin to run not at the start, but at the end of the episode in suit, *i.e.*, upon dismissal of the criminal charges against Albright. *See McCune v. Grand Rapids*, 842 F.2d 903, 908 (CA6 1988) (Guy, J., concurring in result) ("Where ... innocence is what makes the state action wrongful, it makes little sense to require a federal suit to be filed until innocence or its equivalent is established by the termination of the state procedures in a manner favorable to the state criminal defendant."). In sum, Albright's Fourth Amendment claim, asserted within the requisite period after dismissal of the criminal action, in my judgment was neither substantively deficient nor inevitably time-barred.

*Id.* —— U.S. at ——, 114 S.Ct. at 816 (Ginsburg, J. concurring).

Justice Ginsberg's reasoning is applicable to the case before the Court. The prosecution was dismissed prior to conviction. The basis for the State's wrongful prosecution of the claimants was the negligent acts of the state officer. The claimants' innocence is what made the state action, the criminal prosecution based on Gardner's negligence, wrongful. That innocence, or its equivalent, was not established until the criminal prosecution was terminated, and was, as noted by Justice Ginsberg in *Albright*, most relevant to the civil action asserted by the claimants.

In *Dunn v. State of Tennessee*, 697 F.2d 121 (6th Cir.1982), *cert. denied*, 460 U.S. 1086, 103 S.Ct. 1778, 76 L.Ed.2d 349 (1983), a civil action for damages based on the constitutional right against unreasonable searches was found to be analogous in principle to a civil action for malicious prosecution. In that case, which was an action under Section 1983 against two police officers, the plaintiff alleged that he had been deprived of his constitutional rights by being arrested and prosecuted for attempting to exercise the right to be free from unreasonable searches. The court stated the issue:

> The narrow issue raised here is whether plaintiff's 1983 action "accrued" under this statute upon the date when Dunn success-

fully defended the criminal charges against him in the Tennessee Court.

*Id.* at 126 (citations omitted). And the court stated its finding:

> this Court finds that favorable termination of the prior criminal proceeding marks the point at which a 1983 claim for malicious prosecution accrues.

*Id.* at 126–27 (citing to other jurisdictions finding that constitutional claims brought under Section 1983 which are essentially criminal prosecution claims, require that the criminal proceedings be terminated before the civil action is brought).

In *Morrison v. Jones,* 551 F.2d 939 (4th Cir.1977), an action was brought against a county and several of its police officers to recover damages for the deprivation of constitutional rights on the allegation that the police officers had maliciously conspired to prosecute the plaintiff. The district court dismissed the suit upon finding that, though brought within one year from the date the charges had been dismissed, it was barred because the cause of action had accrued on the date the plaintiff had been arrested. The circuit court reversed, holding that

> Since federal law does not define the elements of the claim, we adopt the common law rule that favorable termination of the proceedings is essential. Consequently, the claim does not accrue until the proceedings are terminated.

*Id.* at 940–41 (citations omitted).

Allowing a defendant in a criminal prosecution to file a Section 1983 action for damages prior to the favorable conclusion of the criminal proceeding, may result in " 'the creation of two conflicting resolutions arising out of the same or identical transactions.' " *Heck v. Humphrey,* —— U.S. ——, ——, 114 S.Ct. 2364, 2371, 129 L.Ed.2d 383 (1994) (quoting 8 S. Speiser, C. Krause, & A. Gans, American Law of Torts § 28:5, p. 24 (1991)). In that case, in which the criminal prosecution had proceeded to conviction, the United States Supreme Court held there can be no cause of action for damages based on an alleged unconstitutional conviction until the conviction has been invalidated. In *Heck v. Humphrey,* the plaintiff claimed that the defendants, acting under color of state law, had

engaged in unlawful acts that had led to his arrest and conviction, which conviction was affirmed by the state supreme court. The United States Supreme Court affirmed the dismissal of a Section 1983 complaint for damages. The Court held that,

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit. (Footnotes omitted).

The Court noted that "[j]ust as a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor, ... so also a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." *Id.* —— U.S. at ——, 114 S.Ct. at 2374. *See also McCune v. Grand Rapids,* 842 F.2d 903, 908 (6th Cir.1988) (Guy, J., concurring in result) ("[i]f vindication is necessary to your claim, you have no claim until you are vindicated").

Recently, a judgment of the Second Circuit Court of Appeals was vacated by the United

States Supreme Court because, contrary to *Heck v. Humphrey,* it held that a plaintiff's cause of action for a civil rights violation accrued on the date of his arrest rather than the date his conviction was vacated. *Woods v. Candela,* 13 F.3d 574 (2nd Cir.1994), vacated, — U.S. —, 115 S.Ct. 44, 130 L.Ed.2d 5 (1994). Under *Heck,* the plaintiff in a Section 1983 action for damages must show the criminal conviction has been invalidated if a judgment in the plaintiff's favor would necessarily imply that the conviction was invalid. That holding, on principle, is precisely applicable to the case before the Court.

On the motion to dismiss, the Court in this case must assume that the proof would support the allegations that the state officer withheld and destroyed exculpatory evidence and that her negligent conduct "proximately caused claimant to suffer a deprivation of rights and to be subjected to abuse of process by false and recklessly prepared indictments and prosecutions." That proof necessarily would imply the invalidity of any conviction or sentence which might have been imposed upon the claimants in the criminal proceedings creating the result condemned by *Heck*—two conflicting judicial resolutions arising out of the same transaction. That the criminal prosecution of the claimants terminated by dismissal of the indictments rather than by post-conviction invalidation of convictions is of no consequence. Cf. *Albright v. Oliver,* — U.S. at —, 114 S.Ct. at 810. The significant principle is that the civil action does not accrue unless and until the criminal proceeding has been terminated favorably to the criminal defendant, civil plaintiff.

The cause of action alleged in the case before the Court is similar to those actions brought under Section 1983 in which the federal courts have found the cause of action does not accrue until the claimant has been absolved of any criminal liability. I find these cases persuasive, especially Justice Ginsberg's analysis in *Albright v. Oliver, supra* at —, 114 S.Ct. at 812, and the rationale and holding of *Heck v. Humphrey, supra* — U.S. at — — —, 114 S.Ct. at 2371–72.

The first significant effect of the Court's decision in this case is that it allows, actually compels, the defendant in a criminal case to commence and prosecute a civil action for damages while defending the criminal prosecution. These simultaneous criminal and civil proceedings will present conflicting and disruptive issues and even inconsistent results.

Another effect of the Court's decision is that requiring a criminal defendant to file a claim for damages before the conviction has been invalidated, as a practical matter, will defeat the civil cause of action. Since most criminal prosecutions are not completed within one year, the time within which a civil action for damages must be filed, a person being prosecuted would have the Hobson's choice of energizing the prosecution by filing a suit for damages against the state official or employee acting under color of state law, or allowing the time to pass without filing suit and thereby lose the cause of action for damages. Few will assert the right to damages at the risk of their freedom. Consequently, the remedy for the negligent deprivation of constitutional and statutory rights is, under the majority decision, illusory. The statute was designed to protect the rights of those who are oppressed by official neglect of duty. Justice Souter noted the history of Section 1983, for which T.C.A. § 9–8–307(a)(1)(N) was enacted as an alternative proceeding, as the Ku Klux Act,

> enacted in part out of concern that many state courts were "in league with those who were bent upon abrogation of federally protected rights."

*Heck v. Humphrey,* — U.S. at —, 114 S.Ct. at 2380 (Souter, J., concurring). The Court's decision in this case will impede rather than facilitate the protection of those rights.

## IV

In summary, I dissent because the majority opinion will allow the integrity of a criminal proceeding to be compromised by a simultaneous civil action and because, effectively, it will deny any remedy for the deprivation of the rights that the statute was enacted to protect.

I would hold that the cause of action in this case accrued upon dismissal of the charges and remand the case to the trial court.