IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 16, 2001 Session

## STATE OF TENNESSEE v. A TRACT OF LAND KNOWN AS 141 BELLE FOREST CIRCLE, ET AL.

**Appeal from the Criminal Court for Davidson County**
**No. 2684    Cheryl Blackburn, Judge**

---

**No. M2000-01827-CCA-R3-CD - Filed November 29, 2001**

---

The appellant, Westminster Realty Company, appeals an order entered by the Davidson County Criminal Court denying its claim to an interest in the proceeds from the sale of property pursuant to forfeiture proceedings. Following a thorough review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. Code Ann. § 16-5-108(a)(2)(1994); Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JERRY L. SMITH and JOHN EVERETT WILLIAMS, JJ., joined.

Robert J. Notestine, III, Nashville, Tennessee, for the appellant, Westminster Realty Company.

Paul G. Summers, Attorney General and Reporter; William C. Bright, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and John Zimmerman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

On July 17, 1998, Charles and Donna Hicks were indicted by a Davidson County Grand Jury for one count of conspiracy to sell seven hundred pounds or more of marijuana, one count of possession of seven hundred pounds or more of marijuana, and numerous counts of money laundering. As relevant to the instant case, the record reflects that on February 16, 1994, during the course of her participation in a marijuana distribution conspiracy, Donna Hicks purchased a tract of land known as 141 Belle Forest Circle in Nashville, Tennessee (hereinafter Belle Forest Circle), by borrowing money from her grandmother, Virginia Miller, and from the United States Small Business Administration (hereinafter USSBA). Hicks then repaid the loans and improved the property with the proceeds from the conspiracy. At the time of Hicks' indictment, the USSBA still held a mortgage on Belle Forest Circle.

The record further reflects that prior to her indictment, on May 15, 1997, Hicks leased Belle Forest Circle to High Praise Ministries, Inc., subsequently renamed the Oasis Church, Inc. (hereinafter the Oasis Church), for a term commencing on June 1, 1997, and expiring on May 31, 2000. In relevant part, the lease provided, "In the event Lessor receives an offer to purchase the Demised Premises from a third party not affiliated with Lessor, Lessor agrees to provide Lessee a copy of such offer and the right to purchase the Demised Premises according to the price and terms contained in the offer." The lease further provided that it was binding upon "the respective heirs, administrators, executors, successors and assigns of the respective parties."

Because the lease agreement was procured through the services of Westminster Realty Company (hereinafter the appellant), both Donna Hicks and the Oasis Church also entered into a Brokerage Commission Agreement that, in addition to granting the appellant a commission of three percent of rent collected during the initial term of the lease and any renewal period or periods, provided, "[S]hould Lessor desire to sell [141 Belle Forest Circle] and Lessee becomes the purchaser, a 3% commission will be payable to Westminster Realty if and when the purchase occurs." This agreement was not recorded in the Davidson County Register's Office or otherwise.

Following Hicks' indictment, on March 18, 1998, the State filed a notice of lien lis pendens against Belle Forest Circle. See, e.g., Tenn. Code Ann. § 39-11-707(e) (2000 Supp.). Moreover, on September 30, 1998, the State filed in the Davidson County Criminal Court an "Application for Writ of Attachment and Forfeiture Warrant for Drug Proceeds" pursuant to Tenn. Code Ann. § 53-11-451 (1991). In its application, the State sought the forfeiture of "all monthly lease payments and other funds" that were generated by the lease or use of Belle Forest Circle and that were owed to either Donna Hicks or DH Investments, a company created by Hicks as a tool for money laundering. The trial court granted the State's application, enjoining Donna Hicks from receiving any rent or other income generated by the lease or use of Belle Forest Circle and ordering that any such rent or income be tendered to the District Attorney General's office to be held in escrow by the Trustee for Davidson County pending final adjudication of forfeiture proceedings.

The Hicks ultimately pled guilty to "various drug and money laundering offenses." Contemporaneously, on March 29, 1999, the State filed a "Complaint for Forfeiture" in the Davidson County Criminal Court pursuant to Tenn. Code Ann. § 39-11-701 through -717 (2000 Supp.), seeking the judicial forfeiture of both Belle Forest Circle and the funds held in escrow by the Trustee for Davidson County. In its complaint, the State stipulated that the interest of the USSBA in Belle Forest Circle was exempt from forfeiture under Tenn. Code Ann. § 39-11-704.

Pursuant to the State's complaint and with the Hicks' agreement, the trial court ordered the forfeiture to the State of Belle Forest Circle, subject to the interest of the USSBA, and of the funds held in escrow by the Trustee for Davidson County. Correspondingly, the court ordered the sale of Belle Forest Circle at public auction pursuant to Tenn. Code Ann. § 39-11-713 and the disbursement of the proceeds to the USSBA and as otherwise ordered by the court.

On June 2, 1999, the State further filed in the Davidson County Criminal Court a "Petition to Stipulate Interest of Intervenor," stipulating in essence that the public auction of Belle Forest Circle should be conducted subject to the Oasis Church's leasehold interest, including its right of first refusal. Accordingly, the court amended the "Agreed Order of Forfeiture" to reflect the State's stipulation.

On July 1, 1999, the State notified the court of the sale of Belle Forest Circle to the Oasis Church for a contract sales price of $425,000. Shortly thereafter, on July 8, 1999, the appellant filed a "Notice of Claim," asserting its right to a three percent real estate commission amounting to $12,750. On June 26, 2000, following a hearing "held upon stipulated evidence," the court denied the appellant's claim. In particular, the court concluded that the appellant is not an "interest holder" within the meaning of Tenn. Code Ann. § 39-11-702(2). The appellant now appeals the trial court's order.

## II. Analysis

Part 7 of Chapter 11, Title 39 of the Official Tennessee Code (hereinafter the 1998 Disposition of Forfeited Property Act, the 1998 Act, or the Act), provides for the judicial forfeiture of real or personal property "directly or indirectly acquired by or received in violation of any statute or as an inducement to violate any statute, or any property traceable to the proceeds from such violation." See Tenn. Code Ann. § 39-11-703(a). The 1998 Act replaced Tenn. Code Ann. § 39-11-116 and was intended to supplement "any other statute or law relating to forfeiture of property and may be used in conjunction with administrative forfeiture laws." Tenn. Code Ann. § 39-11-717; cf., e.g., Tenn. Code Ann. § 39-14-307 (1997); Tenn. Code Ann. § 40-33-101 through -214 (1997 & 2000 Supp.); Tenn. Code Ann. § 53-11-451 & -452 (1991); Tenn. Code Ann. § 55-10-403(k) (2001 Supp.). In this appeal, the appellant contends that the Act's effective date is June 27, 1998.[1] Accordingly, the appellant argues that the trial court erred in relying upon the Act to deny its claim because the creation of its interest in the proceeds of any sale of Belle Forest Circle to the Oasis Church preceded this effective date.

Generally speaking, statutes are to be applied prospectively "unless the legislature clearly indicates to the contrary." Shell v. State, 893 S.W.2d 416, 419 (Tenn. 1995). One exception comprises statutes affecting only the method or the procedure for prosecuting or defending a cause of action. Id. We need not, however, decide whether the 1998 Act is substantive or purely procedural as the legislature clearly indicated its intent that the Act be applied retroactively. We note

---

[1]Interestingly, the sessions law enacting the Disposition of Forfeited Property Act provides that the effective date of the Act is July 1, 1997. Act of April 29, 1998, Ch. 979 § 19, 1998 Tenn. Pub. Acts 746, 754. However, the Compiler's Notes to the repealed Tenn. Code Ann. § 39-11-116, contained in the 2000 Supplement to Volume 7 of the Official Tennessee Code, indicate that the effective date of the new law concerning forfeited property is June 27, 1998. Similarly, the codified version of the new law indicates that the effective date is June 27, 1998. See, e.g., Tenn. Code Ann. § 39-11-708(c); Tenn. Code Ann. § 39-11-717. But see generally Tenn. Code Ann. § 1-1-108 (1994). In any event, the parties evidently stipulated in the trial court that the Brokerage Commission Agreement at issue was executed contemporaneously with the lease, i.e., prior to July 1, 1997.

in this regard that neither party in this appeal contends that retroactive application of the statute is constitutionally forbidden.  Cf. Doe v. Sundquist, 2 S.W.3d 919, 923-925 (Tenn. 1999).

The legislature's intent that the 1998 Act be applied retroactively is embodied primarily in Tenn. Code Ann. § 39-11-717, in which the legislature expansively provided that the Act "shall apply retroactively to all proceeds acquired or received prior to June 27, 1998, if the conduct giving rise to forfeiture constituted a criminal offense at the time of the acquisition of the property."  "The very foundation or the basics of statutory construction mandate that a court must pay attention to the plain meaning of what a legislative body says . . . ."  City of Chattanooga v. Davis, 54 S.W.3d 248, 256 (Tenn. 2001).  However, our supreme court has also observed:

> When statutory provisions are . . . enacted as part of a larger Act, "we examine the entire Act with a view to arrive at the true intention of each section and the effect to be given, if possible, to the entire Act and every section thereof.  Where different sections are apparently in conflict we must harmonize them, if practicable, and lean in favor of a construction which will render every word operative."

Hill v. City of Germantown, 31 S.W.3d 234, 238 (Tenn. 2000)(quoting Bible & Godwin Constr. Co. v. Faener Corp., 504 S.W.2d 370, 371 (Tenn. 1974)).  Accordingly, we note that Tenn. Code Ann. § 39-11-708(c) requires that, in the trial court, the State carry the burden of proving by a preponderance of the evidence that

> the property is subject to forfeiture . . . and that one (1) or more acts described in § 39-11-703 giving rise to forfeiture occurred after June 27, 1998, regardless of when the property was originally acquired, as long as the owner's interest in the property appreciated following the commission of an act giving rise to forfeiture.

Construing the above statutory provisions to render every word operative, we conclude that the 1998 Act applies retroactively to property acquired by a criminal owner prior to its effective date so long as (1) the conduct giving rise to forfeiture constituted a criminal offense at the time of the acquisition of the property; (2) one or more of the acts described in Tenn. Code Ann. § 39-11-703 giving rise to forfeiture occurred after the effective date of the 1998 Act; and (3) the owner's interest in the property appreciated following the commission of an act giving rise to forfeiture.  In short, the timing of the creation of the appellant's interest in Belle Forest Circle is irrelevant in determining retroactive application of the 1998 Act, nor does the appellant contest in this appeal the satisfaction of any of the prerequisites to retroactive application that we have listed above.  Indeed, the appellant remarks in its brief, "The forfeiture of the property to the State is apparently valid in that the forfeiture occurred after the relevant statutes went into effect in 1998."

Accordingly, if neither an innocent owner nor interest holder as defined in the 1998 Act, the appellant is not afforded protection under the Act.  Tenn. Code Ann. § 39-11-701(c); Tenn. Code Ann. § 39-11-702 (2) & (3); Tenn. Code Ann. § 39-11-704; Tenn. Code Ann. § 39-11-709(a).  The appellant effectively concedes in its brief on appeal that it is neither an owner nor interest holder

as defined in the 1998 Act. Accordingly, it may not make a claim for return of property seized for forfeiture or otherwise contest the forfeiture under the Act. Tenn. Code Ann. § 39-11-709(a).

Finally, even assuming the inapplicability of the 1998 Act, the State correctly notes the appellant's failure to explain why its interest in the proceeds of the sale of Belle Forest Circle would have been exempt from forfeiture under Tenn. Code Ann. § 39-11-116, the predecessor statute to Tenn. Code Ann. § 39-11-701 through -717. Rather, the appellant claims in essence that the Brokerage Commission Agreement made it a third-party beneficiary of the lease between Hicks and the Oasis Church. Accordingly, the appellant asserts that the State, as Hicks' successor in interest under the lease, was "responsible" for paying the appellant's commission. Our difficulty with this argument lies in our conclusion that the lease and the Brokerage Commission Agreement constituted separate contracts.[2] In other words, the appellant's status as a third-party beneficiary of the lease is irrelevant to a determination of whether the appellant may seek enforcement of the Brokerage Commission Agreement against the State. As the appellant presents no basis for relief other than its status as a third-party beneficiary of the lease, it cannot prevail.

### III. Conclusion

For the foregoing reasons, we affirm the judgment of the trial court.

_____

NORMA McGEE OGLE, JUDGE

---

[2] In Bailey v. Hannibal & St. J. R. Co., 84 U.S. 96, 108 (1872)(footnote omitted), the Supreme Court observed:

> [I]t is well-settled law that several writings executed between the same parties substantially at the same time and relating to the same subject-matter may be read together as forming parts of one transaction, nor is it necessary that the instruments should in terms refer to each other if in point of fact they are parts of a single transaction. Until it appears that the several writings are parts of a single transaction, either from the writings themselves or by extrinsic evidence, the case is not brought within the rule, as it may be that the same parties may have had more than one transaction in one day of the same general nature.

See also 17A AM. JUR. 2D Contracts §§ 388 & 390 (1991). In this case, the Brokerage Commission Agreement did not relate to the same subject matter as the lease, albeit the agreement was collateral to the lease. In other words, the former did not address the conditions under which Hicks would convey to the Oasis Church the right to use and occupy Belle Forest Circle but instead addressed the compensation owed to the appellant for its services in procuring the lease. Cf. McCall v. Towne Square, Inc., 503 S.W.2d 180, 182-183 (Tenn. 1973); Thomas L. Hinson, Jr. v. Midland Bank & Trust Co., No. 85-187-II, 1986 WL 8279, at **4-5 (Tenn. Ct. App. at Nashville, July 30, 1986).

-5-