# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs November 1, 2021

## CALVIN DIBRELL v. STATE OF TENNESSEE

**Appeal from the Tennessee Claims Commission (Eastern Division)**
No. T-20191167      William A. Young, Commissioner

_____

### No. E2021-00405-COA-R3-CV
_____

Appellant, a former inmate with the Tennessee Department of Correction, filed a complaint against Appellee State of Tennessee in the Tennessee Claims Commission ("Commission"). Appellant asserted numerous claims based on alleged misconduct of several assistant district attorneys. The Commission granted the State's motion to dismiss based on the Commission's findings that Appellant's claims were not within the Commission's jurisdiction, and were barred by prosecutorial immunity and the applicable statute of limitations. Discerning no error, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Claims Commission Affirmed

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and KRISTI M. DAVIS, J., joined.

Terrell L. Tooten, Cordova, Tennessee, for the appellant, Calvin Lyndell Dibrell.

Herbert H. Slatery III, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; and Kristen Walker, Assistant Attorney General, for the appellee, State of Tennessee.

## I. Factual and Procedural History

On February 17, 2014, Appellant Calvin Dibrell ("Claimant") was arrested by officers of the Knoxville Police Department on charges of possession of narcotics with intent to sell or deliver. Subsequently, in April 2015, a Knox County Grand Jury returned a twelve-count indictment against Mr. Dibrell for possession of 200 grams of Oxycodone. Prior to his criminal trial, Mr. Dibrell moved to suppress the evidence obtained from the search of his vehicle. In an effort to show that the search was illegal, Mr. Dibrell requested the police-cruiser video of his arrest. Allegedly, the requested video was not made available to Mr. Dibrell prior to hearing on his pre-trial motion to suppress. Nonetheless, following the pre-trial hearing, the criminal court denied Mr. Dibrell's motion, and the case was tried to a jury in June 2016. The jury returned a guilty verdict on all twelve counts of the indictment, and Mr. Dibrell received a twelve-year sentence. On appeal, the Court of Criminal Appeals concluded that the evidence obtained from Mr. Dibrell's vehicle was the result of an illegal search and seizure; thus, the court vacated his conviction and dismissed the case against him. *State v. Dibrell*, No. E2016-02279-CCA-R3-CD, 2018 WL 1474226, at *1 (Tenn. Crim. App. Mar. 26, 2018).

On January 3, 2019, Mr. Dibrell filed a Claim for Damages in the State of Tennessee Division of Claims and Risk Management. Mr. Dibrell claimed that the actions of the Knoxville District Attorney's Office, occurring between "2013 [and the] present," resulted in Mr. Dibrell spending "more than 3 years in prison and suffer[ing] severe emotional and mental stress[, and] severe physical pain because [] injuries [he] suffered while in the military were not properly treated while in prison." Mr. Dibrell sought damages of $500,000 based on his allegation that "[t]he District Attorney General's Office in concert with the Knoxville Police Department knowingly and intentionally engaged in repeated harassment, false arrest, false imprisonment and malicious prosecutions of [Mr. Dibrell] for the past 5 years."

On April 3, 2019, the claim was transferred to the Claims Commission, pursuant to Tennessee Code Annotated § 9-8-402(c).[2] On July 10, 2020, Mr. Dibrell filed a Complaint

---

[1] Rule 10 of the Rules of the Court of Appeals provides:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2] This subsection provides, in relevant part: "If the [D]ivision [of Claims and Risk Management] fails to honor or deny the claim within the ninety-day settlement period, the division shall automatically transfer the claim to the administrative clerk of the claims commission." Tenn. Code Ann. § 9-8-402(c).

against the State of Tennessee. In relevant part, Mr. Dibrell alleged:

6. That Claimant has not been properly or adequately assisted by the District Attorney's Office, from at least 2013 to present, due to assisting in the false imprisonment and malicious prosecutions of Claimant.

7. That Claimant has not received fair or equal protection under the law, in that Defendant elects not to prosecute actions that occur against Claimant, where Claimant is the victim, while prosecuting Claimant maliciously.

8. That Defendant has clear exculpatory evidence in their possession, or could have possessed the evidence upon reasonable inquiry, supporting that Claimant should not have been prosecuted, and yet, Claimant was still prosecuted.

9. Although required from Defendant, Defendant prevented Claimant's trial attorney, and Claimant, from getting copies of police body camera videos which were unedited, or unaltered. In addition, some videos requested by Claimant were never provided at all, after Defendant informed Claimant that they became missing.

10. Defendant then allowed Knoxville Police Officers to testify at pretrial hearings and at trials, knowing that Claimant did not have the video evidence to impeach their testimony.

11. Defendant also became aware that the Knoxville Police Department had been engaged in several questionable and illegal arrests, which had been reported in the news media, and was part of a very big news story in Knoxville.

12. Defendant, however, still failed to provide Claimant with all necessary video evidence, or evidence on the Knoxville Police Department Officers, which could have been used by Defendant to dismiss the cases against Claimant, or which could have been used by Defendant and Claimant to impeach the officers' testimony, so that the truth could be ascertained.

13. Claimant was forced to go to trial on multiple occasions to fight illegal arrests and traffic stops, based on the conduct of the Knoxville Police Department.

14. Defendant had access to this information, and should have been aware of the traffic stops.

15. Claimant experienced more than 40 traffic stops within a 3-year period.

16. Based on the tampered with, and missing evidence, Defendant placed officers on the witness stand who were able to testify untruthfully, without any legitimate fear or concern of being impeached by the missing or destroyed video evidence.

17. Claimant was arrested and jailed for nearly 3 years, based on an illegal traffic stop by the Knoxville Police Department.

18. Instead of carefully reviewing the evidence, witness statements, and all of the facts of the case, Defendant instead repeatedly insisted to Claimant to

- 3 -

make a plea deal.

19. When Claimant refused, he was taken to trial and convicted, based in large part, on false testimony of Knoxville Police Officers, who Defendant called as witnesses.

20. Claimant also had his bond revoked, prior to trial, based on the insistence of Defendant.

21. Defendant relied on evidence and statements made by Knoxville Police Department Officers, which could have, and would have been shown to be clearly false, had any reasonable investigation by Defendant occurred.

22. Ultimately, Claimant appealed his convictions, and the Criminal Court of Appeals reversed the trial court convictions, and then dismissed the charges against Claimant.

23. Defendant has not prosecuted any of the Knoxville Police Department Officers based on their conduct.

24. In fact, Defendant elects not to prosecute parties who commit crimes against Claimant.

25. As recent as the year 2019, Claimant was victimized by [C.M.], and Claimant provided very detailed evidence to Defendant, as requested by Defendant, to show that she had committed bank fraud and theft against Claimant.

26. After requesting multiple documents from Claimant, which fully supported that Claimant was victimized, Defendant informed Claimant that they would not prosecute [C.M.]. It is unclear if the documents were ever reviewed or considered.

27. This is consistent behavior of Defendant, to fail to fully investigate matters on Claimant's behalf.

28. Claimant, no matter how many times he is wronged, has failed to receive equal protection under the law, due to Defendant's lack of effort when it comes to protecting Claimant.

29. Defendant has displayed negligent care, custody, and control over altered evidence, and body camera videos, which could have exonerated Claimant, and impeached the testifying Knoxville Police Department Officers.

30. Defendant has been negligent in the custody and control of Claimant, by causing Claimant to be arrested, and re-arrested, with his bond revoked, based on its failure to properly review the facts and evidence.

On July 10, 2020, the State filed a motion to dismiss the complaint under Tennessee Rule of Civil Procedure 12.02(1) and (6). As grounds, the State asserted that it

is absolutely immune from liability for acts taken by public prosecutors in their role as an advocate or relating to the preparation for a prosecution or judicial hearing. Tenn. Code Ann. § 9-8-307(d) . . . . Additionally, the Claims Commission does not have subject-matter jurisdiction over claims

- 4 -

arising under federal law or the Tennessee or United States Constitutions or over intentional torts, . . . and Claimant fails to state a claim upon which relief can be granted under any provision in the Claims Commission Act.

On December 23, 2020, Mr. Dibrell filed his "First Amended Complaint," wherein he incorporated the allegations made in the initial Complaint and further alleged:

41. In 2006, Claimant was falsely accused of rape by Assistant District Attorney [M.W.].
42. [M.W.] was a white female, and [Claimant] is a black male who was falsely accused, and is being subjected to the conduct explained in this Complaint based on his race.
43. Once accused, the S.W.A.T. team was called, and [Claimant] was arrested, and received extensive news and media coverage.

***

46. . . . [I]t was determined that [Claimant] was falsely accused, based on DNA evidence.
47. However, [Claimant], since that time, has been arrested and prosecuted multiple times by Defendant and the Knoxville Police Department.

***

49. Despite the fact that the allegations were not true, Defendant and [Knoxville Police Department] Officers believed the allegations against [Claimant], and prosecuted [Claimant] unjustly.

***

51. When [Claimant] attempted to exercise his constitutional rights to a trial, and to receive evidence on his behalf, Defendant attempted to keep him from doing so by having [Claimant] jailed with no bond, after vouching for evidence that Defendant either knew, or should have known was false.
52. Defendant knew that [Claimant] had a State and United States Constitutional right to a bond.
53. When [Claimant] tried to exercise his right to a bond, he was deprived of it based on Defendant having the bond revoked for no reason.
54. Defendant has also attempted to discourage [Claimant] from pursuing any litigation against Defendant, or the Knoxville Police Department, by refusing to protect [Claimant] whenever he seeks the help of the Knoxville Police Department.
55. Defendant did this to intimidate [Claimant], and to send him a message

that if he attempts to exercise his legal rights and to seek justice against them, he will be punished.

56. [Claimant], while bringing litigation against Defendant and the Knoxville Police Department, has been threatened by the Knoxville Police Department that they would kill him.

57. Defendant is aware of this information, and has not protected Complainant in order to further intimidate [Claimant], and to use this intimidation to help make the matters go away.

On February 22, 2021, the State moved to dismiss the Amended Complaint, again asserting absolute prosecutorial immunity, lack of subject-matter jurisdiction, and failure to state a claim for relief. The State also raised the affirmative defense that Mr. Dibrell's claims were barred by the applicable statute of limitations. Tenn. R. Civ. P. 8.03.

By order of March 24, 2021, the Commission granted the State's motion to dismiss on its findings that: (1) the State had absolute immunity from liability for every claim set out in the Amended Complaint; (2) the Commission lacked subject-matter jurisdiction over the claims; and (3) the claims were barred by the applicable statute of limitations. Mr. Dibrell appeals.

## II. ISSUE

The sole issue for review is whether the Claims Commission erred in dismissing Mr. Dibrell's Amended Complaint.

## III. STANDARD OF REVIEW

Our review of the Claims Commission's findings of fact is *de novo* on the record, with a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). The Claims Commission's conclusions of law, however, are subject to *de novo* review, with no presumption of correctness. ***Nichols v. Nichols***, No. E2004-02486-COA-R3-CV, 2005 WL 2978968, *3 (Tenn. Ct. App. Nov. 7, 2005).

Here, the Commission dismissed Mr. Dibrell's Amended Complaint on grant of the State's Tennessee Rule of Civil Procedure 12.02 motion to dismiss. The Tennessee Supreme Court has set out the standard under which we review the grant or denial of a motion to dismiss:

> A Rule 12.02(6) motion challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence. The resolution of a 12.02(6) motion to dismiss is determined by an examination of the pleadings alone. A defendant who files a motion to dismiss admits the truth of all of the relevant and material allegations contained in the complaint,

but asserts that the allegations fail to establish a cause of action.

> In considering a motion to dismiss, courts must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences. A trial court should grant a motion to dismiss only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. We review the trial court's legal conclusions regarding the adequacy of the complaint de novo.

***Webb v. Nashville Area Habitat for Humanity, Inc.***, 346 S.W.3d 422, 426 (Tenn. 2011) (citations omitted).

Whether the Claims Commission has jurisdiction over the claims in a complaint, ***Williams v. State***, 139 S.W.3d 308, 311 (Tenn. Ct. App. 2004), and whether a claim is barred by a statute of limitations, ***Brown v. Erachem Comilog, Inc.***, 231 S.W.3d 918, 921 (Tenn. 2007), are questions of law, which we review *de novo*, with no presumption of correctness. ***Nichols***, 2005 WL 2978968 at *3.

## IV. ANALYSIS

Based on the averments set out in his Complaint and Amended Complaint, the Commission found that Mr. Dibrell asserted the following claims: (1) false imprisonment and/or malicious prosecution; (2) violations of constitutional rights such as equal protection, due process, negligent deprivation of statutory rights of liberty, life, and freedom; (3) negligent care, custody and control of Claimant and property. As such, we begin our analysis by addressing whether the Commission erred in dismissing any of the foregoing claims on grant of the State's Tennessee Rule of Civil Procedure 12.02 motion.

### A. Malicious prosecution and false imprisonment

The State of Tennessee is immune from lawsuits, except "in such manner and in such courts as the Legislature may by law direct." Tenn. Const. art. I, § 17. "The only statutory exceptions to the sovereign immunity of the State of Tennessee are those claims that may be heard by the Tennessee Claims Commission pursuant to Tennessee Code Annotated section 9-8-307 *et seq.*" ***Baxter v. State***, No. W2015-00078-COA-R3-CV, 2015 WL 9946302, at *4 (Tenn. Ct. App. Aug. 10, 2015). In other words, "the Claims Commission lacks subject matter jurisdiction and has no authority to hear any claims that fall outside the categories enumerated in section 9-8-307(a)." ***Mullins v. State***, 320 S.W.3d 273, 279 (Tenn. 2010).

False imprisonment and malicious prosecution are intentional torts. *See* ***Coffee v.***

- 7 -

***Peterbilt of Nashville, Inc.***, 795 S.W.2d 656, 660 (Tenn. 1990); ***Shell v. State***, 893 S.W.2d 416, 421 (Tenn. 1995). The "Claims Commission does not have jurisdiction . . . over any intentional torts" because they are not enumerated in section 9-8-307(a)(1). ***Shell***, 893 S.W.2d at 421 (citing Tenn. Code Ann. § 9-8-307(a)); *see also* Tenn. Code Ann. § 9-8-307(d) ("The state will not be liable for willful, malicious, or criminal acts by state employees, or for acts on the part of state employees done for personal gain."). Therefore, dismissal of Mr. Dibrell's claims for malicious prosecution and false imprisonment was proper on the ground of lack of subject-matter jurisdiction.

Nonetheless, even if the Commission had jurisdiction over Mr. Dibrell's intentional tort claims, they would be barred by the doctrine of prosecutorial immunity. "[I]t is settled that prosecutors are immune from actions for malicious prosecution."[3] ***Shell***, 893 S.W.2d at 421. Indeed, "the District Attorney is entitled to a prosecutor's absolute immunity from damages arising from his initiation and pursuit of a prosecution and in presenting the State's case." ***Simmons v. Gath Baptist Church***, 109 S.W.3d 370, 374 (Tenn. Ct. App. 2003).[4] Because both the false imprisonment and the malicious prosecution claims "aris[e] from the prosecutorial functions of state official[s]," the District Attorney's office is immune from prosecution for both causes of action. *See* ***Morton v. State***, No. M2008-02305-COA-R3-CV, 2009 WL 3295202, at *3 (Tenn. Ct. App. Oct. 13, 2009). Such immunity applies even when, as in the instant case, a plaintiff accuses a prosecutor of presenting false testimony at trial. *See* ***Howell v. Bottoms***, No. 01-A-019107-CV-00244, 1991 WL 202563, at *1 (Tenn. Ct. App. Oct. 11, 1991); *accord* ***Cady v. Arenac Cty.***, 574 F.3d 334, 340 (6th Cir. 2009).

## B. Negligent care, custody, and control of persons and of property

Tennessee Code Annotated section 9-8-307(a)(1)(E) grants the Claims Commission jurisdiction over claims of "[n]egligent care, custody and control of persons." Tennessee Code Annotated section 9-8-307(a)(1)(F) grants the Commission jurisdiction over claims involving "[n]egligent care, custody or control of personal property." The Commission dismissed these claims on its finding that the factual allegations contained in the Amended Complaint are ostensibly reiterations of the intentional tort claims of false imprisonment and malicious prosecution. Specifically, the Commission's order states that, "To the extent

---

[3] "Suits against state employees acting in their official capacities are deemed to be suits against the State itself." ***Simmons v. Gath Baptist Church***, 109 S.W.3d 370, 374 (Tenn. Ct. App. 2003) (citing ***Cox v. State***, 217 Tenn. 644, 399 S.W.2d 776 (1965)).

[4] Mr. Dibrell cites cases that involve conduct for which a district attorney would not enjoy absolute immunity. Such conduct may include investigative or administrative acts, giving legal advice to police, or out-of-court statements made at a press conference. *See* ***Spurlock v. Thompson***, 330 F.3d 791, 798 (6th Cir. 2003). As stated in his brief, Mr. Dibrell asserts that, "Appellee failed to do its job and treated Appellant improperly during an investigative period prior to any indictment, and after the trial of Appellant, which would not provide Appellee with absolute immunity"; however, he has not actually identified any conduct by any member of the District Attorney's Office that would be excepted from immunity, nor have we identified any through our review of the record.

the Complaint asserts allegations of false imprisonment and/or malicious prosecution . . . . such allegations would fall into the realm of intentional torts, and as such, would not be subject to the Commission's jurisdiction. Such claims do not . . . fall within the scope of the enumerated categories of jurisdiction." The Commission further held that, to the extent Mr. Dibrell's claims for malicious prosecution and/or false imprisonment are based on allegations of "willful, malicious, or criminal acts by state employees," the State would be immune from prosecution under Tennessee Code Annotated section 9-8-307(d) ("The state will not be liable for willful, malicious, or criminal acts by state employees, or for acts on the part of state employees done for personal gain.").

In his Amended Complaint, Mr. Dibrell asserts that: "[The State] has been negligent in the custody and control of [Mr. Dibrell], by causing [him] to be arrested, and re-arrested, with his bond revoked, based on its failure to properly review the facts and evidence." From this statement, it appears that Mr. Dibrell's argument is that negligence and/or willful misconduct on the part of the District Attorney's Office caused him to be arrested, *i.e.*, to come to be in the care, custody, or control of the State, and it is that negligence that forms the basis of his claim. As the Commission held, this claim sounds in malicious prosecution, false imprisonment, or "willful, malicious, or criminal acts by state employees." As such, the Commission correctly concluded that Mr. Dibrell's claims for negligent care, custody, and control of his person are reiterations of the barred intentional torts and do not fall within the Commission's jurisdiction under Tennessee Code Annotated section 9-8-307(a)(1)(E). Although, in his initial notice of claim, Mr. Dibrell alleged that he suffered injury because his existing medical issues were not properly addressed while he was imprisoned, in his actual Complaint and Amended Complaint, Mr. Dibrell fails to plead any facts that he suffered injury due to the negligence of the State while he was in the State's care, custody, or control. As such, he fails to state a claim under Tennessee Code Annotated section 9-8-307(a)(1)(E).

Likewise, Mr. Dibrell fails to state a claim for negligent care, custody, and control of personal property. Tenn. Code Ann. § 9-8-307(a)(1)(F). In his Amended Complaint, Mr. Dibrell alleges: "Defendant has displayed negligent care, custody, and control over altered evidence, and body camera videos, which could have exonerated Claimant, and impeached the testifying Knoxville Police Department Officers." As set out in context above, Mr. Dibrell specifically alleges that Defendants; (1) "tampered" with evidence; (2) allowed evidence to go "missing;" (3) failed to disclose exculpatory evidence; and (4) failed to provide Mr. Dibrell with "unedited, or unaltered" copies of the police body camera videos. Taking Mr. Dibrell's allegations as true, as we must in reviewing the grant of a Tennessee Rule of Civil Procedure 12.02 motion, the foregoing allegations would constitute evidence tampering, i.e., "willful, malicious, or criminal acts by state employees." As noted above, Tennessee Code Annotated section 9-8-307(d) relieves the State from liability for such acts. Furthermore, prosecutorial immunity applies even when, as in the instant case, a plaintiff accuses a prosecutor of presenting false testimony at trial. *See Howell*, 1991 WL 202563, at *1; *accord Cady*, 574 F.3d at 340. As such, Mr. Dibrell

fails to state a claim under Tennessee Code Annotated section 9-8-307(a)(1)(F).

## C. Constitutional claims

As set out in context above, Mr. Dibrell alleges various violations of his constitutional right to due process, and his "privilege to be free from the taking of his personal property." In 1989, the Tennessee Legislature expressly revoked jurisdiction for claims involving the negligent deprivation of constitutional rights. *Shell*, 893 S.W.2d at 418–19.[5] Accordingly, the foregoing claims are not within the jurisdiction of the Commission. *Morton*, 2009 WL 3295202, at *3.

Mr. Dibrell also alleges that the State "negligently deprived [him] of his statutory right of liberty, life, and freedom, by causing him to be arrested and re-arrested, based on a failure to properly review the facts and the evidence." While the Commission has jurisdiction over actions involving the negligent deprivation of statutory rights, Tenn. Code Ann. § 9-8-307(a)(1)(N), this Court has noted that, "The section[, i.e., 9-8-307(a)(1)(N)] requires that the claimant show that the legislature expressly conferred a private right of action against the State." *Byrd v. State*, 150 S.W.3d 414, 420 (Tenn. Ct. App. 2004). Here, Mr. Dibrell not only fails to identify the specific statutes at issue, but he also fails to show that the legislature has conferred a private cause of action based on the facts alleged in the Amended Complaint. The grant of a motion to dismiss "is warranted only when the alleged facts will not entitle the plaintiff to relief, or when the complaint is totally lacking in clarity and specificity." *Utley v. Tenn. Dep't of Correction*, 118 S.W.3d 705, 712 (Tenn. Ct. App. 2003) (citations omitted). As the Tennessee Supreme Court has explained:

> Tennessee courts have long interpreted Tennessee Rule of Civil Procedure 8.01 to require a plaintiff to state "'the facts upon which a claim for relief is founded.'" *Smith v. Lincoln Brass Works, Inc.*, 712 S.W.2d 470, 471 (Tenn. 1986) (quoting *W & O Constr. Co. v. City of Smithville*, 557 S.W.2d 920, 922 (Tenn.1977)). A complaint "need not contain detailed allegations of all the facts giving rise to the claim," but it "must contain sufficient factual allegations to articulate a claim for relief." *Abshure* **[*v. Methodist Healthcare-Memphis Hosps.***], 325 S.W.3d [93] at 103–04 [(Tenn. 2010)]. "The facts pleaded, and the inferences reasonably drawn from these facts, must raise the pleader's right to relief beyond the speculative level." *Id.* at 104.

*Webb*, 346 S.W.3d at 427. Furthermore, "courts are not required to accept as true assertions

[5] "In May 1989, as part of an act modifying several provisions of § 9-8-307, the General Assembly deleted the words 'or constitutional' from § 9–8–307(a)(1)(N)." *Shell*, 893 S.W.2d at 418 (citing Acts of 1989, ch. 491, § 1, 1989 Tenn. Pub. Acts 853, 854.)

that are merely legal arguments or legal conclusions couched as facts." **Id.** (quotation marks omitted). Here, Mr. Dibrell's allegations are simply too conclusory and vague to make out a claim for violation of any statutory right.

## D. Malicious harassment

We briefly address Mr. Dibrell's contention that his Amended Complaint "supported the cause of action of [m]alicious [h]arassment . . . [which] the [Commission] failed to address." To assert a claim for malicious harassment, a plaintiff must prove

> that a person acted maliciously, i.e., ill-will, hatred or spite, . . . [and] unlawfully intimidated another from the free exercise or enjoyment of a constitutional right by injuring or threatening to injure or coercing another person or by damaging, destroying or defacing any real or personal property of another person.

***Washington v. Robertson Cty.***, 29 S.W.3d 466, 473 (Tenn. 2000) (citing Tenn. Code Ann. § 39-17-309(b) (1997)).

In his original notice of claim, Mr. Dibrell alleges that he was the victim of "repeated harassment" by the Knoxville District Attorney's Office and the Knoxville Police Department. However, in his Amended Complaint (which is the document we review to determine the propriety of the trial court's grant of the State's motion to dismiss), Mr. Dibrell never uses the words "harassment" or "malicious harassment." Rather, as discussed above, Mr. Dibrell's allegations sound in malicious prosecution, which is not within the Commission's jurisdiction. Nonetheless, "the primary purpose of pleadings is to provide notice of the issues presented to the opposing party and court." ***Webb***, 346 S.W.3d at 426. To that end, a complaint "must contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action." ***Abshure***, 325 S.W.3d at 104 (quoting Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004)) (ellipses and brackets omitted). At best, Mr. Dibrell's pleadings create a mere suspicion of harassment, but fail to include facts and allegations sufficient to put Defendants on notice of a malicious harassment claim. As such, Mr. Dibrell fails to state a claim for this tort.

## E. Statute of limitations

In addition to dismissing Mr. Dibrell's Amended Complaint on grounds of lack of subject-matter jurisdiction and prosecutorial immunity, the Commission also found that Mr. Dibrell's claims were barred by the applicable statute of limitations. We agree. Mr. Dibrell alleged that "he has been treated improperly since at least the year 2013." In his Amended Complaint, he further alleged that, "[i]n **2006**, [he] was falsely accused of rape. . . ." Furthermore, Mr. Dibrell's primary complaints stem from his most recent arrest in

2014,[6] and the ensuing trial in 2016. Suits to recover for tort claims including personal injury, false imprisonment, and malicious prosecution must be commenced within one year after the cause of action accrued. Tenn. Code Ann. § 28-3-104(a)(1). Mr. Dibrell filed his notice of claim on January 3, 2019. Insofar as his claims are based on injuries that occurred prior to January 4, 2018, such claims are barred by the statute of limitations.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the Commission is affirmed, and the case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to the Appellant, Calvin Dibrell, for which execution may issue if necessary.

_____s/ Kenny Armstrong_____
KENNY ARMSTRONG, JUDGE

---

[6] We note that any complaints arising directly from the arrest would involve only the Knoxville Police Department, over which the Commission has no jurisdiction.